# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**TIMOTHY J. BURNS**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CHANDRA K. HEIN**
Deputy Attorney General
Indianapolis, Indiana

**FILED**
Mar 24 2014, 9:28 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DAVID SESAY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1305-CR-434 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Linda Brown, Judge
Cause No. 49F10-1303-CM-14621

**March 24, 2014**

**OPINION - FOR PUBLICATION**

**ROBB, Judge**

## Case Summary and Issue

Following a bench trial, David Sesay was found guilty of public intoxication, a Class B misdemeanor, and sentenced to a term of 180 days, with 178 days suspended to probation. Sesay appeals his conviction, raising a single issue for the court's review: whether the evidence of "endangerment" is sufficient to support his conviction for public intoxication. Concluding the State failed to prove Sesay engaged in any conduct beyond intoxication that endangered his life, we reverse.

## Facts and Procedural History[1]

On March 3, 2013, Indianapolis Metropolitan Police Department Officer Adam Jones was assigned to the late shift patrolling the southwest district of Indianapolis. At approximately 3:00 a.m., he was dispatched to the intersection of Walton Street and Girls School Road to investigate a "no information accident." Transcript at 7. When he arrived, he found a vehicle with its "left side tires . . . on the fog line down into" a four or five foot deep drainage ditch with water at the bottom. Id. at 8. Sesay was standing next to the car approximately three to five feet away from the roadway. Officer Jones did not see Sesay in the road at any point and there was no evidence he was ever in a position such that a car traveling lawfully on the road could hit him where he stood. Sesay was covered in mud, presumably having gotten out of the car on the passenger side, and it appeared to Officer Jones that Sesay had vomited on himself. Sesay had a strong odor of what Officer Jones

---

[1] We heard oral argument on February 11, 2014, at Perry Meridian High School in Indianapolis, Indiana. We extend our appreciation to the faculty, staff, and students for their hospitality and to counsel for their presentations.

believed to be alcohol on his breath and red or glassy bloodshot eyes. Sesay told Officer Jones that his girlfriend had been driving the car, but neither she nor anyone else was in the area. Officer Jones "felt very strongly that Mr. Sesay was highly intoxicated." Id. at 7-8. Officer Jones felt Sesay was a danger to himself because he "could barely standup without assistance," id. at 9-10, it was 3:00 a.m. so bars were closing, there was not a great deal of street lighting in the area, and Sesay was so close to the side of the road he could have been hit by a car. Officer Jones testified that he was alarmed for Sesay's safety if he were to leave him alone. Officer Jones arrested Sesay, moved him away from the vehicle, and sat him on a curb to wait for the jail wagon to arrive. Sesay's girlfriend arrived on the scene approximately twenty minutes after Officer Jones and prior to the arrival of the jail wagon.

The State charged Sesay with public intoxication, a Class B misdemeanor. Following a bench trial at which Officer Jones was the sole witness, the trial court found Sesay guilty:

> I do believe that the – that but for this officer arriving when he did and taking the steps necessary to secure the safety of Mr. Sesay, I believe it can be inferred that he endangered his life. He was near or on a road. He was staggering. He had the odor of alcohol. He had vomited on himself. He had red and glassy bloodshot eyes. And the officer had to assist him to be seated, and to help him even stand at three (3) o'clock in the morning. And so I think it can be inferred that he was endangering his life. And I believe the officer was alarmed at his behavior and took the necessary steps to secure his safety. So I do believe the State has met its burden beyond a reasonable doubt.

Id. at 23. The court sentenced Sesay to 180 days with 178 days suspended to probation, and ordered him to have alcohol evaluation and treatment, attend Advocates Against Impaired Driving Destructive Decision Panel, refrain from alcohol use during probation, and complete forty hours of community service. Sesay now appeals his conviction.

## Discussion and Decision

### I. Standard of Review

Our standard of review for sufficiency claims is well-settled:

> When we review a claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. We look only to the probative evidence supporting the judgment and the reasonable inferences therein to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. If there is substantial evidence of probative value to support the conviction, it will not be set aside.

Houston v. State, 997 N.E.2d 407, 409 (Ind. Ct. App. 2013) (citations omitted). "Reversal is appropriate only when reasonable persons would not be able to form inferences as to each material element of the offense." Bond v. State, 925 N.E.2d 773, 781 (Ind. Ct. App. 2010), trans. denied.

### II. Proof of Endangerment

Sesay was charged with public intoxication pursuant to Indiana Code section 7.1-5-1-3(a), which states:

> [I]t is a Class B misdemeanor for a person to be in a public place or a place of public resort in a state of intoxication caused by the person's use of alcohol . . ., if the person:
> (1) endangers the person's life;
> (2) endangers the life of another person;
> (3) breaches the peace or is in imminent danger of breaching the peace; or
> (4) harasses, annoys, or alarms another person.

Sesay specifically challenges the trial court's finding that the evidence proved he endangered his own life.[2]

---

[2] The State noted at oral argument that Sesay was charged generally under all four subsections of the

4

The public intoxication statute has existed in its current iteration since July 1, 2012. Prior to that date, public intoxication required only proof that a person was intoxicated and was in a public place. See Christian v. State, 897 N.E.2d 503, 504 (Ind. Ct. App. 2008), trans. denied. Under the prior definition, our supreme court held that an intoxicated passenger in a car traveling upon a public road could be found guilty of public intoxication. Moore v. State, 949 N.E.2d 343, 344 (Ind. 2011). The court responded to the defendant's argument that her conviction violated the policy and spirit of the public intoxication statute by stating, "[w]hether conduct proscribed by a criminal law should be excused under certain circumstances on grounds of public policy is a matter for legislative evaluation and statutory revision if appropriate." Id. at 345.

Shortly after the Moore decision, the legislature accepted the court's invitation and amended the statute to add the four conduct elements to the definition of public intoxication. It is clear from the timing of the amendment that the legislature did not intend simply being drunk in a public place to be a criminal offense but intended to require some additional conduct. See Holbert v. State, 996 N.E.2d 396, 402 (Ind. Ct. App. 2013) ("[T]he plain language of the statute conditions the entirety of the phrase 'to be in a public place . . . in a state of intoxication' on the occurrence of one of the four listed criteria."), trans. denied. The amendment reflects the policy we had long declared to be behind the statute: "to prevent people from becoming inebriated and then bothering and/or threatening the safety of other

_____

statute. Although Officer Jones's testimony was primarily directed to whether Sesay was in danger, he also stated that Sesay's behavior "alarmed" him. See Tr. at 9, 14. However, the State conceded at oral argument that it proceeded at trial on the theory that Sesay violated subsection (1) only. Thus we address herein only

5

people in public places." Id. at 401 (citation omitted); see also State v. Sevier, 117 Ind. 338, 20 N.E. 245, 246-47 (1889) ("The purpose of the law is to protect the public from the annoyance and deleterious effects which may and do occur because of the presence of persons who are in an intoxicated condition."). It also furthers the public policy of "encouraging inebriated persons to avoid creating dangerous situations by walking, catching a cab, or riding home with a designated driver rather than driving while intoxicated." Stephens v. State, 992 N.E.2d 935, 938 (Ind. Ct. App. 2013). Not surprisingly, relatively few cases have been decided under the amended language and our supreme court has yet to weigh in.

Williams v. State, 989 N.E.2d 366 (Ind. Ct. App. 2013), is the only case from this court to specifically address the endangerment element.[3] Williams and several friends were leaving a downtown Indianapolis bar in the early morning hours when one member of the group was hit by a car. A large group, including Williams, gathered around her as she lay in the street. When police officers arrived, they attempted to clear the street so that emergency vehicles would be able to access the victim. Most people dispersed, but Williams, despite

whether Sesay was endangering his own life.

[3] Thang v. State, 2013 WL 5833307 (Ind. Ct. App., Oct. 31, 2013), also addressed the endangerment element. In that case, a police officer came out of a gas station restroom to find a car in the parking lot and a customer in the store that had not been there when he went in, and he was alerted by the cashier that the customer was intoxicated. The car was registered to the defendant, and the defendant had the keys in his possession. The defendant was convicted of public intoxication on the officer's testimony alone for alarming the cashier and endangering himself or others by driving to the gas station. On appeal, this court reversed, holding with respect to the endangerment element that because the officer did not see the defendant drive his vehicle into the gas station parking lot and arrested him before he could attempt to reenter the vehicle and drive away, and because the cashier who might have seen the defendant actually driving did not testify, the "evidence was insufficient to establish that the inebriated [defendant] drove his vehicle. As such, he cannot be said to have endangered himself or others." Id. at *3. The State's petition to transfer was granted on February

6

being asked multiple times to step out of the street, did not. Officers testified Williams appeared extremely intoxicated, with a strong odor of alcohol about his person; glossy, red, bloodshot eyes; slurred speech; and unsteady balance. He was belligerent with the officers, and they eventually had to forcibly remove him from the street because they believed he was a danger to himself. As they were escorting him out of the street, Williams jerked his left arm away from one of the officers and shoved the second officer's hand off his other arm. He was charged with and convicted of public intoxication under the amended statute. He argued to this court that the evidence was insufficient to support his conviction because it proved only that he was intoxicated. We noted:

> the evidence most favorable to the conviction reveals that police attempted to clear the street where [the victim] had been struck so that emergency vehicles could access the area to treat her, that Williams was extremely intoxicated and staggered from side to side, that he refused to move off of the street and to the sidewalk although commanded by the police multiple times to do so, that he was belligerent with the officers, which the officers believed was due to his intoxicated condition, that Williams did not move out of the street until the officers physically escorted him off of the street, that he was staggering as the officers escorted him to the sidewalk, and that he jerked his arm away from Officer Woodings and shoved Sergeant Durham's hand away from him. Sergeant Durham testified that the officers had to escort Williams off of the street and "over to the sidewalk to deal with him so that [they] did not get struck by cars" and that the officers believed that Williams was "an intoxicated person who was a danger to himself."

989 N.E.2d at 370-71. We held this was sufficient evidence to prove that Williams was in a public place in an intoxicated state that endangered himself or other persons, breached the peace, or harassed, annoyed, or alarmed another. Id. at 371.

Also affirming a public intoxication conviction under the amended statute is Naas v.

---

3, 2014, thus vacating our opinion.

State, 993 N.E.2d 1151 (Ind. Ct. App. 2013), in which Naas was found guilty of public intoxication under the alarm and breach of peace prongs. Naas and the occupants of a vehicle with which he was involved in a traffic incident each drove to a gas station where an argument ensued between the parties. A police officer responding to the scene observed the argument, specifically observing Naas yelling and walking aggressively toward the other couple, who were backing away from him. Naas had red watery eyes, slurred speech, unsteady balance, and smelled of alcohol. The trial court found him guilty of public intoxication because he "breached the peace with his manner and behavior and that he did, I am going to infer, alarm[ ] the other people by the fact that they backed away." Id. at 1152. On appeal, Naas argued there was insufficient evidence that he breached the peace or that his behavior alarmed another person. We held the evidence was sufficient:

> The evidence most favorable to the conviction reveals that Naas was agitated, yelling, "trying to continue the altercation," and walking in an aggressive manner, causing the other parties to back away. . . . We agree that the evidence of the parties backing away is sufficient to infer that Naas alarmed them when he yelled and walked in an aggressive manner toward them. Accordingly, we conclude that the evidence of intoxication and alarming others constitutes substantial evidence of probative value to support Naas's conviction of Class B misdemeanor public intoxication.

Id. at 1153.

We reversed a conviction for public intoxication based on the "breaches the peace or is imminent danger of breaching the peace" prong in Stephens, 992 N.E.2d 935.[4] Stephens

---

[4] Also reversing a public intoxication conviction for insufficient evidence was Holbert, 996 N.E.2d 396. However, the reversal in Holbert was based upon where the defendant was when he engaged in behavior that alarmed another person rather than on what constitutes alarming another for purposes of the statute. Id. at 402.

had been drinking at the home he shared with his niece. During a fight between the niece and her boyfriend, the boyfriend assaulted Stephens. Police were called to the home, but they left without making an arrest. Stephens left the home and walked to a nearby convenience store, where he called the police. When an officer arrived, Stephens told him about the fight, admitted that he had been drinking, and asked that the officer take him to jail because of the altercation with his niece's boyfriend. He reported that if he went home, another fight would break out. The officer noted Stephens smelled of alcohol and had bloodshot eyes, slurred speech, and was unsteady on his feet and arrested him for public intoxication. The trial court found him guilty, in part reasoning that Stephens was in imminent danger of breaching the peace if he returned home. We reversed:

> . . . Stephens was initially in a private place where he had every right to be intoxicated. When police made no arrests after he was assaulted in his home by his niece's boyfriend, Stephens sought to extricate himself from the situation by walking to a public place, calling the police, stating that he was drunk, and requesting that he be taken to jail rather than returning to the dangerous situation at home. Simply put, he was asking the police for help. The mere fact that he was intoxicated in a public parking lot did not amount to a violation of the public intoxication statute. He did not breach the peace, and to the extent the trial court reasoned that he was in "imminent danger of breaching the peace" if he returned home, we find such a conclusion to be speculative. The danger, if any, was that he would be the victim of another assault, not the perpetrator.

992 N.E.2d at 938.[5]

And in Morgan v. State, 2014 WL 561665 (Ind. Ct. App., Feb. 13, 2014), this court reversed a public intoxication conviction, holding the "annoys another" prong of the public

---

[5] The State did not file an Appellee's Brief in Stephens, and therefore, the defendant was only required to show prima facie error. See id. at 937.

intoxication statute was unconstitutionally vague. Morgan was charged with public intoxication after a police officer heard yelling coming from a nearby bus shelter and observed Morgan sleeping on the bus shelter bench while his brother, the only other occupant of the shelter, yelled at him to wake up. The officer roused Morgan and told him several times to vacate the shelter. When Morgan eventually stood up, he was unsteady on his feet and the officer detected the odor of alcohol emanating from him. He was also agitated and angry. "Believing Morgan to be intoxicated, 'coupled with the fact that . . . his behavior was annoying,'" the officer placed him under arrest. Slip op. at *1. Morgan appealed his conviction, arguing the public intoxication statute is unconstitutionally vague because there is no objective standard for evaluating what is "annoying" conduct which fails to give notice of the proscribed conduct and encourages arbitrary enforcement. We agreed, holding:

> the statute neither requires that a defendant have specifically intended to annoy another, nor does it employ an objective standard to assess whether a defendant's conduct would be annoying to a reasonable person. Furthermore, the statute does not mandate that the defendant have been first warned that his behavior was considered annoying conduct. Instead, this section of the statute enables arbitrary and discriminatory enforcement because the illegality of any conduct—no matter how trivial or how substantial—is based solely on the subjective feelings of a particular person at any given time.

Id. at *6.

"Endangerment" is likewise not defined by the statute, although Sesay makes no constitutional argument with respect to this prong. Given there is but one case specifically addressing this prong in reference to the public intoxication statute, we look also to cases involving Class A misdemeanor operating while intoxicated ("OWI"). Until 2001, there was

10

a single Class A misdemeanor crime of OWI,[6] and "intoxicated" was defined as "under the influence of alcohol . . . so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties to an extent that endangers a person." Ind. Code § 9-13-2-86 (1991). In 2001, the legislature amended these two statutes to eliminate the phrase "to an extent that endangers a person" from the definition of intoxication in section 9-13-2-86 and instead establish two separate misdemeanor crimes of OWI, one of which now incorporates the endangerment language:

(a)     Except as provided in subsection (b), a person who operates a vehicle while intoxicated commits a Class C misdemeanor.
(b)     An offense described in subsection (a) is a Class A misdemeanor if the person operates a vehicle in a manner that endangers a person.

Ind. Code § 9-30-5-2 (2001). The two levels of OWI—one without and one with an endangerment requirement—are similar in relation to each other as the pre- and post-amendment definitions of public intoxication.

In the post-2001 OWI context, we have made it clear that the State is required to offer proof of endangerment that goes beyond mere intoxication in order to obtain a Class A misdemeanor conviction. Vanderlinden v. State, 918 N.E.2d 642, 645 (Ind. Ct. App. 2009) ("To the extent that our decisions have suggested that a showing of intoxication without more is adequate to prove endangerment, the amended statutes supplant those holdings."), trans. denied; see also Outlaw v. State, 918 N.E.2d 379, 382 (Ind. Ct. App. 2009) (reversing conviction for Class A misdemeanor OWI where defendant exhibited signs of intoxication

_____

[6] "A person who operates a vehicle while intoxicated commits a Class A misdemeanor." Ind. Code § 9-30-5-2 (1991).

once he was pulled over, but the traffic stop was based on a non-illuminated license plate rather than any erratic or unlawful driving), adopted by 929 N.E.2d 196, 196 (Ind. 2010) (explicitly rejecting the State's argument that evidence of intoxication is sufficient to prove endangerment post-statutory amendment). If we applied to the OWI statute the State's argument herein that unsupported speculation about what might happen or what could have happened is enough to prove endangerment, then simply getting into a vehicle in an intoxicated state would constitute endangerment and every offense would be the Class A misdemeanor. The legislative amendment separating the OWI offense into two classes would be irrelevant under that argument and our cases do not so hold.

Here, too, something more than mere intoxication is now required to prove a person has committed the crime of public intoxication. The State conceded as much at oral argument, and argues that standing near the edge of the road was sufficient additional conduct to prove Sesay was endangering his life, noting that he could have fallen into the road or been hit by a car. For several reasons, we disagree with the State that Sesay standing alongside the road, which is what Officer Jones observed when he arrived at the scene, was endangering his life.

One of the reasons behind the amendment was to further the public policy of encouraging people to avoid driving while intoxicated and instead walk, take a cab or a bus, or catch a ride home with a designated driver without fear of being prosecuted anyway. See Stephens, 992 N.E.2d at 938; cf. Moore, 949 N.E.2d at 344. If Sesay was endangering his life simply by standing near the road in an intoxicated state, then every intoxicated person

who chooses not to drive but instead to walk home along a sidewalk, stand near the road to hail a cab, or wait for public transportation at a bus stop is guilty of public intoxication and the legislature's addition of the "endangerment" element would be rendered superfluous.

Additionally, it is the conduct of the intoxicated person that must cause the endangerment. One of the State's justifications for the conviction here is that Sesay could have been hit by a car as he stood several feet from the side of the road. But even a sober person standing alongside the road could be hit by a passing car if the driver of that car was driving erratically or failing to pay attention. When Officer Jones came upon Sesay, he was standing near the road alongside a stopped car. Officer Jones testified that Sesay had not and did not try to walk away from the scene but that he did not think Sesay would have been able to walk away because he could barely stand up without assistance. Nonetheless, Officer Jones did not see Sesay in the roadway, nor did he see him fall—or nearly fall, for that matter; he was just afraid that he might. There is nothing to indicate that Sesay's intoxication made it more likely that <u>he</u> would be hit by a car, and it is <u>his</u> conduct and not the conduct of a passing motorist that is the relevant consideration.[7]

Finally, speculation regarding things that <u>could</u> happen in the future is not sufficient to prove the present crime of public intoxication.[8] This is not an attempt crime where the

---

[7] We note also that the parties agreed at oral argument there was no evidence Sesay had been driving the vehicle that ended up in the ditch and therefore no evidence that the wreck itself or the aftermath thereof endangered his life by his own hand.

[8] We agree with the concurring opinion that it must be the conduct of the defendant that places him in danger; however, we go a step further and believe that the defendant's conduct must cause <u>actual</u> danger. We acknowledge that the general definition of "endanger" includes possible loss, but we believe the term as used in the statutory definition of a crime requires something more.

person can take a substantial step toward committing public intoxication by being intoxicated. Moreover, the statute says a person commits public intoxication if he is in a public place in a state of intoxication <u>and</u> if the person "<u>endangers</u>" his life, not if he endangers or <u>might</u> endanger his life. <u>Compare</u> Ind. Code § 7.1-5-1-3(a)(1) <u>with</u> Ind. Code § 7.1-5-1-3(a)(3) (stating a person commits public intoxication if he is in a public place in a state of intoxication if he "breaches the peace <u>or is in imminent danger of breaching the peace</u>"). If it is sufficient to speculate about all the various things that <u>might</u> befall a person, then, again, the legislature's addition of endangerment as an element would be rendered superfluous because there is virtually no scenario in which a person in a public place would not be found guilty of public intoxication for simply being intoxicated. Such a construction would stretch the statute to an absurdity.

Unlike the defendant in <u>Williams</u> who was in the street, ignored repeated requests to move out of the street for the safety of himself and others, and actively confronted officers with belligerent and physical behavior, 989 N.E.2d at 370-71, Sesay was standing peaceably several feet off the road beside a car that had been driven into a ditch. He told Officer Jones that his girlfriend had been driving the car, yet no one else was at or near the scene, so it is clear he had waited at the car for a not insignificant amount of time. No danger had yet manifested itself nor was it likely to once Officer Jones and then Sesay's girlfriend arrived on the scene. Under these circumstances, and with the policy and purpose of the amended public intoxication statute in mind, we hold that the State failed to prove Sesay was endangering his life and thus there is insufficient evidence to support his conviction for

14

public intoxication.

## Conclusion

To prove the offense of public intoxication, the State is required to show that a person is in a public place, in an intoxicated state, and—as relevant to this case—endangering his life. Although there is no question that Sesay was in a public place and that he was intoxicated, the State failed to prove that he engaged in any additional conduct that endangered his life. Sesay's conviction is, therefore, reversed.

Reversed.

RILEY, J., concurs.

BRADFORD, J., concurs in result with separate opinion.

15

# IN THE
# COURT OF APPEALS OF INDIANA

DAVID SESAY,                              )
                                          )
    Appellant-Defendant,          )
                                          )
        vs.                 )          No. 49A02-1305-CR434
                                          )
STATE OF INDIANA,                         )
                                          )
    Appellee-Plaintiff.           )

**BRADFORD, Judge, concurring in result.**

I concur with the majority's conclusion that Sesay's conviction should be reversed. However, I write separately to clarify that while I believe that the evidence presented at trial was sufficient to show that Sesay was endangered at the time of his arrest, I believe that Indiana Code section 7.1-5-1-3 requires a showing that the endangerment resulted from an affirmative act by Sesay and, in the instant matter, the evidence presented below was insufficient to make such a showing.

### Whether the Evidence Is Sufficient to Sustain Sesay's Conviction for Class B Misdemeanor Public Intoxication

On appeal, Sesay contends that evidence is insufficient to sustain his conviction for Class B misdemeanor public intoxication because the State failed to establish that he endangered his life or the life of another. Indiana Code section 7.1-5-1-3 provides that "it is a Class B misdemeanor for a person to be in a public place … in a state of intoxication

16

caused by the person's use of alcohol … if the person: (1) endangers the person's life; (2) endangers the life of another person; (3) breaches the peace or is in imminent danger of beaching the peace; or (4) harasses, annoys, or alarms another person." The general assembly has not defined "endanger" with regard to the public intoxication statute. The Webster's Third New International Dictionary, however, defines endanger as "to bring into danger or peril of probable harm or loss." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 748 (14th ed. 1961). This definition allows for probable harm or loss and does not require actual harm or loss.

In the instant matter, the parties acknowledge that Sesay was involved in a traffic accident when the vehicle in which he was a passenger went off the road and down into a four or five foot deep ditch. All agree, the driver of the vehicle, who was not Sesay, initially left the scene but returned some time later. Officer Jones testified that when he first encountered Sesay, he was standing approximately three to five feet off of a dark busy city street at approximately 3:00 a.m. Sesay appeared to be very intoxicated, had what looked to be vomit on his shirt, and could barely stand without assistance. The vehicle, next to which Sesay was standing, had gone off the street and into a four to five foot ditch. Officer Jones observed that there was water in the bottom of the ditch. Because I read the definition of endangerment to require only that the individual bring himself or another into danger or peril of probable harm or loss, as opposed to actual harm or loss, I would conclude that the above-stated evidence was sufficient to sustain a determination that Sesay was endangered at the time of his arrest.

17

However, even though I would conclude that Sesay was endangered at the time of his arrest, I believe that the clear language of Indiana Code section 7.1-5-1-3 requires a showing that the endangerment was caused by some act of the individual who is alleged to have committed public intoxication. Again, Indiana Code section 7.1-5-1-3 provides, in relevant part, that "it is a Class B misdemeanor for a person to be in a public place … in a state of intoxication caused by the person's use of alcohol … *if the person* … endangers the person's life." (Emphasis added). I believe that the phrase "if the person," which precedes the phrase "endangers the person's life," indicates that the endangerment must be caused by some act of the individual.

In the instant matter, the record is devoid of any evidence pointing to any act committed by Sesay that could be said to have endangered Sesay.[9] Again, the parties all agree that Sesay was a passenger in a vehicle that went off the roadway and down into a four to five foot ditch. The act of driving off the roadway cannot be attributed to Sesay as he was merely a passenger in the vehicle at the time of the incident. Further, the decision to exit a vehicle that had gone off the road and was resting on uneven ground in a water laden ditch seems reasonable and hardly seems like a decision that would justify a finding that Sesay endangered himself.

In addition, the record states that Sesay was standing three to five feet from the roadway when Officer Jones first encountered Sesay. There were no sidewalks along the roadway where Sesay could safely stand while awaiting help, and Officer Jones testified that

_____

[9] Intoxication alone is insufficient to sustain a finding of endangerment. *See Vanderlinden v. State*,

18

he did not, at any point, see Sesay enter the street. While I believe that standing along the side of the roadway in his intoxicated state was sufficient to place Sesay in a position of danger of probable harm, the record does not provide any other reasonable alternative for Sesay's actions.

Considering my belief that Sesay's decision to exit the vehicle was reasonable and did not increase Sesay's level of endangerment together with the fact the record is devoid of any suggestion of what Sesay could have done to decrease his level of endangerment while he stood by the vehicle and awaited help, I would conclude that the State failed to demonstrate that Sesay acted in a way that endangered his life. As such, I would vote to reverse his conviction for Class B misdemeanor public intoxication.

---

918 N.E.2d 642, 645 (Ind. Ct. App. 2009).