## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 16 2019, 5:49 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew M. Kubacki
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael Poge, Jr., *Appellant-Defendant,* | January 16, 2019 |
| v. | Court of Appeals Case No. 18A-CR-758 |
| | Appeal from the Marion Superior Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable Carol Orbison, Senior Judge |
| | Trial Court Cause No. 49G19-1712-CM-46771 |

**Tavitas, Judge.**

# Case Summary

[1] Michael Poge, Jr. appeals his conviction for public intoxication, a Class B misdemeanor. We affirm.

# Issue

[2] The sole issue on appeal is whether the State presented sufficient evidence to prove that Poge endangered himself.

# Facts

[3] In the early morning hours of December 2, 2017, a 911 caller reported a break-in at an apartment complex located near the 4200 block of Meadows Drive, "a busy street," in Indianapolis. Tr. Vol. II p. 7. It was an extremely cold morning. Indianapolis Metropolitan Police Department Officer Tiffany Rand was dispatched to the scene. Outside one of the apartment buildings, Officer Rand encountered Poge "[s]taggering all over the place" near the street. *Id*. at 8. A damaged fence surrounded the apartment building, which faced Meadows Drive.

[4] Poge exhibited various signs of intoxication, including impaired and slurred speech, and he could not stand, maintain his balance, or walk without assistance. Poge was unable, for several minutes, to tell Officer Rand his name. Poge was also unable to provide his address or to identify a person who could come to the scene and take him home. Officer Rand placed Poge under arrest for his own safety because

> [Poge] had nowhere to go. He didn't know his address. He couldn't walk by himself. And like I said it was a cold night. So, I didn't want him to get robbed, hit by a car, freeze to death.

*Id*. at 10.

[5] On December 4, 2017, the State charged Poge with public intoxication, a Class B misdemeanor. At Poge's bench trial on March 9, 2018, Officer Rand testified to the foregoing facts. Also, the following colloquy ensued during direct examination of Officer Rand:

> Q    Do you know what specific events occurred that led to the 911 call?
>
> [Defense Counsel]: Objection. Hearsay.
>
> [Prosecutor]: Your Honor, I'm not asking for any spoken words or anyone else's words, I am asking for a ---
>
> THE COURT: She can – she can testify as to what the 911 call indicated as the reason that she was needed on that location.
>
> [Prosecutor]: Thank you.
>
> A    It was a female caller stating that a black male was trying to knock down her door.
>
> Q    And did you arrive at after that?
>
> A    Yes.

\* \* \* \* \*

> Q   Officer Rand, when you first arrived on scene, where was [Poge], specifically?
>
> A   Standing outside the complainants [sic] building.

*Id*. at 8, 9-10.[1]

[6]   At the close of the evidence, the trial court found Poge guilty as charged. The trial court sentenced Poge to one hundred and eighty days in the Department of Correction and ordered the term suspended to probation, except for time served. Poge now appeals.

## Analysis

[7]   Poge challenges the sufficiency of the evidence to establish his conviction for public intoxication, a Class B misdemeanor. Specifically, Poge argues that the State merely speculated as to future conduct that might occur and, thereby, failed to present evidence that Poge "engaged in any conduct that endangered his life beyond his intoxication." Appellant's Br. p. 6.

[8]   When there is a challenge to the sufficiency of the evidence, "[w]e neither reweigh evidence nor judge witness credibility." *Gibson v. State,* 51 N.E.3d 204, 210 (Ind. 2016) (citing *Bieghler v. State,* 481 N.E.2d 78, 84 (Ind. 1985), *cert.*

---

[1] There is no evidence in the record that Poge was identified as the black male who attempted to break into the 911 caller's apartment.

*denied*).  Instead, "we 'consider only that evidence most favorable to the judgment together with all reasonable inferences drawn therefrom.'" *Id.* (quoting *Bieghler,* 481 N.E.2d at 84)*.*  "We will affirm the judgment if it is supported by 'substantial evidence of probative value even if there is some conflict in that evidence.'"  *Id.* (quoting *Bieghler,* 481 N.E.2d at 84)*; see also McCallister v. State,* 91 N.E.3d 554, 558 (Ind. 2018) (holding that, even though there was conflicting evidence, it was "beside the point" because that argument "misapprehend[s] our limited role as a reviewing court").  Further, "[w]e will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Love v. State,* 73 N.E.3d 693, 696 (Ind. 2017) (citing *Drane v. State,* 867 N.E.2d 144, 146 (Ind. 2007)).

[9]    To prove that a defendant has committed public intoxication, the State must establish the following:

> (a) . . . [I]t is a Class B misdemeanor for a person to be in a public place or a place of public resort in a state of intoxication caused by the person's use of alcohol . . . , if the person:
>
> (1) endangers the person's life;
>
> (2) endangers the life of another person;
>
> (3) breaches the peace or is in imminent danger of breaching the peace; or
>
> (4) harasses, annoys, or alarms another person.

Ind. Code § 7.1-5-1-3. The State charged Poge under subsection Indiana Code Section 7.1-5-1-3(a)(1). Poge argues the State presented no evidence that he endangered his life.

[10] We addressed a similar argument in *Williams v. State,* 989 N.E.2d 366 (Ind. Ct. App. 2013). As Williams left a bar with a group of friends, a member of the group was struck by a car. The injured person was incapacitated on the street, and a crowd gathered around her. When responding police officers attempted to clear the street for emergency vehicles, Williams refused to comply. The officers observed a strong odor of alcohol about Williams' person. Williams had glassy and bloodshot eyes, his speech was slurred, and his balance was unsteady. Williams became belligerent and aggressive with the officers; and, as they escorted him from the street, Williams jerked his left arm away from an officer and shoved a second officer's hand off Williams' right arm. In affirming Williams' conviction and finding sufficient evidence that he endangered himself or the lives of others, a panel of this court cited the officers' testimony that they "believed that Williams was 'an intoxicated person who was a danger to himself.'" *Williams*, 989 N.E.2d at 370-71.

[11] Poge cites our holding in *Sesay v. State*, 5 N.E.3d 478 (Ind. Ct. App. 2014), *trans. denied*, in support of his claim that the State's evidence of endangerment was speculative. In *Sesay,* a police officer observed Sesay standing on the passenger

side of a vehicle that was stuck in a drainage ditch.[2] Sesay was approximately three to five feet off the roadway and did not pose a threat to passing or approaching motorists. Sesay smelled of alcohol, had glassy and bloodshot eyes, and had vomited on himself. Believing Sesay to be highly intoxicated, the officer arrested Sesay for public intoxication because, in the officer's view, Sesay could not stand without assistance, the surrounding area was dark, and Sesay could be struck by a car. Sesay was charged with, and subsequently convicted of, public intoxication, a Class B misdemeanor.

[12] On appeal, Sesay argued that the State failed to prove that he endangered his life. We reversed, reasoning, in part, that:

> **. . . it is the conduct of the intoxicated person that must cause the endangerment.** One of the State's justifications for the conviction here is that Sesay could have been hit by a car as he stood several feet from the side of the road. But even a sober person standing alongside the road could be hit by a passing car if the driver of that car was driving erratically or failing to pay attention. When Officer Jones came upon Sesay, he was standing near the road alongside a stopped car. Officer Jones testified that Sesay had not and did not try to walk away from the scene but that he did not think Sesay would have been able to walk away because he could barely stand up without assistance. Nonetheless, Officer Jones did not see Sesay in the roadway, nor did he see him fall—or nearly fall, for that matter; he was just afraid that he might. **There is nothing to indicate that Sesay's intoxication made it more likely that *he* would be hit by a car,**

---

[2] The vehicle had been involved in an accident. Sesay was not the driver.

**and it is *his* conduct and not the conduct of a passing motorist that is the relevant consideration.**

Finally, speculation regarding things that *could* happen in the future is not sufficient to prove the present crime of public intoxication. This is not an attempt crime where the person can take a substantial step toward committing public intoxication by being intoxicated. Moreover, the statute says a person commits public intoxication if he is in a public place in a state of intoxication *and* if the person "*endangers*" his life, not if he endangers or *might* endanger his life. *Compare* Ind. Code § 7.1-5-1-3(a)(1) *with* Ind. Code § 7.1-5-1-3(a)(3) (stating a person commits public intoxication if he is in a public place in a state of intoxication if he "breaches the peace *or is in imminent danger of breaching the peace*"). If it is sufficient to speculate about all the various things that *might* befall a person, then, again, the legislature's addition of endangerment as an element would be rendered superfluous because there is virtually no scenario in which a person in a public place would not be found guilty of public intoxication for simply being intoxicated. Such a construction would stretch the statute to an absurdity.

*Id*. at 485 (internal citations and footnotes omitted) (italics emphasis in original, bold emphasis added).

[13] In the instant case, Officer Rand testified that Poge was staggering drunk outside on a bitterly cold December night. Poge could not recall his address; nor could Poge identify anyone who could drive him home. Officer Rand testified that she arrested Poge "for his own safety" because she "didn't want him to . . . freeze to death." App. Vol. II p. 12.

[14] Although we can understand Poge's reliance on *Sesay*, his reliance is misplaced. As the *Sesay* panel cautioned, "it is the conduct of the intoxicated person that must cause the endangerment." *Sesay*, 5 N.E.3d at 485. In *Sesay*, the police officer arrested Sesay for public intoxication endangering himself because Sesay could be struck by a car. In reversing Sesay's conviction, we reasoned that nothing about Sesay's conduct posed a threat of harm to him, when police encountered him standing a safe distance from the roadway, awaiting a ride. *See id.* ("There is nothing to indicate that Sesay's intoxication made it more likely that *he* would be hit by a car, and it is *his* conduct and not the conduct of a passing motorist that is the relevant consideration.").

[15] In the instant case, which is more akin to *Williams*, Poge's "conduct" that caused the endangerment was his inability to recognize that the weather conditions posed real danger. Poge could not provide his address or identify a person who could pick him up and demonstrated his inability to care for himself. Without Poge's address or the identity of a person who could attend to him, Officer Rand had no options to protect Poge from the danger that the bitter cold and his intoxication created.

[16] Inasmuch as Poge's intoxication overrode his instinct to urgently seek shelter from the bitter cold, the extreme cold did not pose a merely speculative threat. Thus, Officer Rand believed that Poge was "an intoxicated person who was a danger to himself." *See Williams*, 989 N.E.2d at 370-71. To the extent that Poge asserts that *Sesay* warrants a different conclusion here, we must disagree. Because a reasonable fact-finder could find the elements of the crime proven

beyond a reasonable doubt, we conclude that the State presented sufficient evidence to convict Poge. *See Love,* 73 N.E.3d at 696.

# Conclusion

The State presented sufficient evidence to support Poge's conviction. We affirm.

Affirmed.

Brown, J., and Altice, J., concur.