

FILED

Sep 12 2019, 10:43 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Andrew Stebbins
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Josiah Swinney
Deputy Attorney General

Michael Sherman
Certified Legal Intern
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Danish Pulido,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

September 12, 2019

Court of Appeals Case No.
19A-CR-834

Appeal from the Marion Superior
Court

The Honorable Steven Rubick,
Magistrate

Trial Court Cause No.
49G10-1803-CM-008898

**Pyle, Judge.**

# Statement of the Case

Danish Pulido ("Pulido") appeals his conviction, following a bench trial, for Class B misdemeanor public intoxication.[1] Pulido argues that there was insufficient evidence to support his conviction, specifically challenging the endangerment element. Concluding that the State failed to prove beyond a reasonable doubt that Pulido endangered his own life as required by the public intoxication statute, we reverse his conviction.

We reverse.

# Issue

Whether sufficient evidence supports Pulido's conviction.

# Facts

On March 10, 2018, Indianapolis Metropolitan Police Department Officer Danielle Lewis ("Officer Lewis") responded to a dispatch from an anonymous 9-1-1 caller who had reported that a "male subject was staggering . . . on[] the sidewalk" and was "walking adjacent to the city street." (Tr. 3, 4). The officer went to an intersection near "West 30th Street and Muslim Drive" and noticed a man, later identified as Pulido, who "was staggering[.]" (Tr. 3, 4). The officer yelled for Pulido to stop, and he did. At that point, Pulido had "a hard time maintaining a balance while standing straight[,] . . . was kind of swaying while

---

[1] IND. CODE § 7.1-5-1-3.

standing[, and] had to keep using his arms to regain his balance." (Tr. 4). Officer Lewis "also noticed that he had red glassy eyes, and slurred speech." (Tr. 4). She "believed" that Pulido was "heavily intoxicated." (Tr. 5). The officer asked Pulido "if he was okay, . . . where he was headed to[], [and] where he lived[,]" and Pulido "told [her] that he did not know any of those things." (Tr. 4). Officer Lewis "was worried about his welfare" and asked Pulido if "there was somebody that [she] could call to come pick him up[.]" (Tr. 4). Pulido "said he did not because he was quote 'so drunk right now[.]'" (Tr. 4). Officer Lewis then arrested Pulido.

[4] The State charged Pulido with Class B misdemeanor public intoxication. The charging information alleged, in relevant part, that Pulido had "endangered his life" under INDIANA CODE § 7.1-5-1-3(a)(1). (App. Vol. 2 at 12). On March 15, 2019, the trial court held a bench trial, and the State presented one witness. Officer Lewis testified to the facts set forth above. During the officer's testimony, Pulido's counsel raised a hearsay objection when Officer Lewis testified that she had been dispatched to the scene based on an anonymous 9-1-1 caller who had reported that a male was staggering on the sidewalk. The trial court overruled the objection, stating that the "nature of the 9-1-1 call [wa]s admissible." (Tr. 3).

[5] During closing arguments, the State argued that it had "met its burden" and had shown "actual danger" based on "the 9-1-1 call[.]" (Tr. 5). Pulido's counsel again objected, arguing that the 9-1-1 call could not be used as substantive evidence, and the trial court sustained his objection. The State then

argued that Pulido's "own statement[s] that he did not know where he was going" and "did not know who to call" had "met the element of endangerment[.]" (Tr. 5-6).

[6] Pulido's counsel cited to *Sesay v. State*, 5 N.E.3d 478 (Ind. Ct. App. 2014) and *Davis v. State*, 13 N.E.3d 500 (Ind. Ct. App. 2014) and argued that the State had failed to prove the endangerment element because there was no evidence that Pulido had "actually endangered himself." (Tr. 6). Pulido's counsel pointed out that "there was no evidence that [Pulido] . . . was ever in any danger of being hit by a vehicle or of hurting himself in any way." (Tr. 6). He also argued that the evidence, which showed merely that Pulido was staggering on a sidewalk, was "not enough . . . to prove endangerment." (Tr. 6).

[7] The trial court found Pulido guilty as charged. When entering its verdict, the trial court specifically addressed Pulido's argument regarding the evidence of the endangerment as follows: "The officer testified the young man [Pulido] was staggering next to a city street, Court finds that satisfies the obligation of proving endangerment." (Tr. 6). The trial court imposed a 180-day sentence with 178 days suspended and credit for time served. Pulido now appeals.

## Decision

[8] Pulido argues that the evidence was insufficient to support his conviction for Class B misdemeanor public intoxication. He does not challenge the evidence that he was intoxicated in a public place. His sole argument is that the State failed to prove beyond a reasonable doubt that he had endangered his life.

[9] Our standard of review for challenges to the sufficiency of the evidence is well settled.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences *supporting* the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder would find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (internal quotation marks and citations omitted) (emphasis in original). Additionally, our Indiana Supreme Court has explained that "when determining whether the elements of an offense are proven beyond a reasonable doubt, a fact-finder may consider both the evidence *and the resulting reasonable inferences*." *Thang v. State*, 10 N.E.3d 1256, 1260 (Ind. 2014) (emphasis in original).

[10] In 2012, our legislature amended the public intoxication statute, INDIANA CODE § 7.1-5-1-3, "to add the four conduct elements to the definition of public intoxication so that it is no longer a crime to simply be intoxicated in public." *Milam v. State*, 14 N.E.3d 879, 881 (Ind. Ct. App. 2014). *See also Stephens v. State*, 992 N.E.2d 935, 938 (Ind. Ct. App. 2013). The amended public

intoxication statute in effect at the time of Pulido's crime, provided, in relevant part, as follows:

> . . . it is a Class B misdemeanor for a person to be in a public place . . . in a state of intoxication caused by the person's use of alcohol . . . , if the person:
>
>> (1) endangers the person's life;
>>
>> (2) endangers the life of another person;
>>
>> (3) breaches the peace or is in imminent danger of breaching the peace; or
>>
>> (4) harasses, annoys, or alarms another person.

I.C. § 7.1-5-1-3(a). Our supreme court explained that "[t]he legislature's modifications to the Public Intoxication statute were in apparent response to th[e] [Indiana Supreme] Court's decision in 2011 that affirmed the conviction of an automobile passenger for Public Intoxication." *Thang*, 10 N.E.3d at 1260 (citing *Moore v. State*, 949 N.E.2d 343 (Ind. 2011)). The purpose of the additional conduct elements in INDIANA CODE § 7.1-5-1-3(a)(1)-(4) is to "further the public policy of 'encouraging inebriated persons to avoid creating dangerous situations by *walking*, catching a cab, or riding home with a designated driver rather than driving while intoxicated.'" *Davis v. State*, 13 N.E.3d 500, 502-03 (Ind. Ct. App. 2014) (quoting *Sesay v. State*, 5 N.E.3d 478, 481 (Ind. Ct. App. 2014), *trans. denied*) (emphasis added).

[11] Here, the State charged Pulido with public intoxication under subsection (a)(1), alleging that Pulido had endangered his own life. Pulido contends that there

was no evidence that he had endangered his life while walking on the sidewalk while in an intoxicated state. Pulido challenges the trial court's conclusion that that State had shown that he had endangered his life based on the officer's testimony that "Pulido 'was staggering next to a city street[.]'" (Pulido's Br. 5) (quoting Tr. 6). Pulido points out that there was no evidence that he had walked into the street or he had fallen or hurt himself. As he did at the bench trial, Pulido relies on *Sesay* and *Davis* to support his argument that there was insufficient evidence that he had endangered his life.

[12] In *Sesay* and *Davis*, we reversed each defendant's public intoxication conviction based on insufficient evidence that the defendant had endangered his life as required under subsection (a)(1) of public intoxication statute. In *Sesay*, the intoxicated defendant was standing three to five feet from the roadway near where his vehicle had gone into a drainage ditch. The officer dispatched to the scene testified that "he was alarmed for [the defendant's] safety if he were to leave him alone." *Id.* at 479. The officer "felt" that the defendant was "a danger to himself" based on the facts that he "could barely standup without assistance, . . . it was 3:00 a.m. so bars were closing, there was not a great deal of street lighting in the area, and [the defendant] was so close to the side of the road [that] he could have been hit by a car." *Id.* (internal quotation marks omitted). The officer "did not see [the defendant] in the road at any point and there was no evidence [that] he [had] ever [been] in a position such that a car traveling lawfully on the road could have hit him where he stood." *Id.* When reversing the defendant's public intoxication conviction, we rejected the State's

argument that the defendant "*could* have fallen into the road or been hit by a car." *Id.* at 485 (emphasis added). We explained that "it is the conduct of the intoxicated person that must cause the endangerment" and held that "speculation regarding things that *could* happen in the future is not sufficient to prove the present crime of public intoxication." *Id.* (emphasis in original).

[13] In *Davis*, the police arrived at the scene "[e]arly in the morning" and found the defendant in an apartment's grassy common area. *Davis*, 13 N.E.3d at 501. This area was near a "busy" two-lane road that had "no sidewalks or shoulders abutting the roads" and that had poor lighting. *Id.* at 502. The defendant had slurred speech, bloodshot eyes, "smelled heavily of alcohol," had stumbled when walking, and had to be propped up against a patrol car by the police. *Id.* At trial, the arresting officer testified that he "feared that if he allowed [the defendant] to walk away, [he] would be struck by a car." *Id.* On appeal, the State argued that the defendant had endangered his life because he had been walking "near the road" and "was in danger of being struck by a car if he left the apartment complex." *Id.* at 503, 504. Our Court reversed the defendant's public intoxication conviction, explaining that the State's argument that the defendant *would* be in danger of being struck by a car if had been allowed to keep walking was "merely speculative" and holding that the "State may not convict [a defendant] for what *would* or *could* have happened." *Id.* at 504 (emphasis added).

[14] In response to Pulido's sufficiency challenge, the State contends that Pulido "created a dangerous situation" by "his inability to maintain his balance as he

walked adjacent to a roadway," (State's Br. 7), and that "Officer Lewis's testimony about Pulido's behavior is enough to sustain Pulido's conviction." (State's Br. 5). The State asserts that "Pulido placed himself in a situation where each drunken step *could have* placed him on a city street, endangering his life." (State's Br. 5) (emphasis added). The State rationalizes Pulido's conviction for public intoxication by suggesting that Officer Lewis brought Pulido to "safety" and "[p]rotect[ed] Pulido from this danger" of potentially wandering into the street by arresting him instead of "allow[ing] Pulido to continue aimlessly stumbling alongside the road[.]" (State's Br. 7).

[15] The public intoxication statute neither defines the term "endangers the person's life" nor the general term of endangerment. Our Court, in *Davis* and *Sesay*, reviewed the language of the statute and various public intoxication cases in an effort to interpret the meaning. "Noting that the [public intoxication statute] uses the present tense 'endangers' and not the conditional tense 'might endanger,' we reasoned that 'speculation regarding things that *could* happen in the future is not sufficient to prove the present crime of public intoxication.'" *Davis*, 13 N.E.3d at 503 (quoting *Sesay*, 5 N.E.3d at 485-86) (emphasis in original). We also recognized that the legislature had not included language suggesting future or conditional conduct in subsection (a)(1) of the public intoxication statute ("endangers the person's life") as it had included in subsection (a)(3) of the statute ("breaches the peace or *is in imminent danger* of breaching the peace"). *See Sesay*, 5 N.E.3d at 486. When synthesizing the various public intoxication cases, our Court noted:

The common thread in these cases is *past or present conduct* by the defendant did or did not place life in danger. While the statute does not require that actual harm or injury occur, some action by the defendant constituting endangerment of the life of the defendant . . . must be shown. This is true even where an officer testifies that the defendant was a danger to himself or others. *See, e.g., Sesay,* 5 N.E.3d at 479. Were it otherwise, citizens could be convicted for possible, future conduct. The policy behind the current public intoxication statute is to encourage intoxicated persons to avoid danger by walking or catching a ride rather than driving. *Stephens,* 992 N.E.2d at 938. Although we acknowledge that intoxicated persons may also create danger by walking in public places, that danger must have manifested itself in order for the State to obtain a conviction.

*Davis*, 13 N.E.3d at 503 (emphasis added).

[16] Here, Officer Lewis testified that Pulido was staggering on the sidewalk next to a city street when she encountered him. Officer Lewis provided no testimony regarding the presence of traffic along that street at the time of their encounter.[2] The officer ordered Pulido to stop, and he complied with the order. Once Pulido stopped, the officer observed that he had slurred speech, red glassy eyes, and difficulty maintaining his balance. Additionally, Pulido told the officer that he did not know the answer to her questions about where he lived and where he was going.

---

[2] Nor is there any evidence of the time of day that the officer encountered Pulido.

[17]   It is undisputed that Pulido was intoxicated in a public place. The State, however, did not present any evidence of Pulido's past or present conduct or action that endangered his life. *See Davis*, 13 N.E.3d at 503. We reject the State's argument that the evidence was sufficient to support his conviction because Pulido's act of being intoxicated while on the sidewalk "created a dangerous situation." (State's Br. 7). The statute required that the State prove that Pulido "endanger[ed] [his] life[.]" I.C. § 7.1-5-1-3(a)(1). We also reject the State's suggestion that we should affirm Pulido's public intoxication conviction based on Officer Lewis' attempt to protect Pulido from any future, potential harm of walking in the street and getting struck by a car. The State's argument is "merely speculative, not proof beyond a reasonable doubt." *See Davis*, 13 N.E.3d at 504. Indeed, as we have previously warned:

> If it is sufficient to speculate about all the various things that *might* befall a person, then, again, the legislature's addition of endangerment as an element would be rendered superfluous because there is virtually no scenario in which a person in a public place would not be found guilty of public intoxication for simply being intoxicated. Such a construction would stretch the statute to an absurdity.

*Sesay*, 5 N.E.3d at 486 (emphasis in original). Given the evidence presented during Pulido's bench trial and the specific language of subsection (a)(1) of the public intoxication statute as set forth by our legislature, we conclude that the State failed to prove beyond a reasonable doubt that Pulido had endangered his own life. *See, e.g.*, *Davis*, 13 N.E.3d at 503-04; *Sesay*, 5 N.E.3d at 486. Accordingly, we reverse his public intoxication conviction.

[18]    Reversed.

Robb, J., and Mathias, J., concur.