# FOR PUBLICATION



**FILED**

Jun 19 2013, 7:08 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**SUZY ST. JOHN**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOSIAH WILLIAMS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1211-CR-878 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable William J. Nelson, Judge
Cause No. 49F07-1207-CM-48116

**June 19, 2013**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Josiah Williams appeals his conviction for public intoxication as a class B misdemeanor. Williams raises one issue, which we revise and restate as whether the evidence is sufficient to sustain his conviction. We affirm.

FACTS AND PROCEDURAL HISTORY

On July 14, 2012, Williams, his cousin, and a friend went to Hooters, then to Bartini's, and then to Tiki Bob's in Indianapolis. At Tiki Bob's, Williams unexpectedly encountered his friend Carly, who was celebrating her twenty-first birthday with several friends. At approximately 2:00 a.m., Carly's mother, Michelle, went to Tiki Bob's to pick up Carly and her friends.

At 3:00 a.m., when Tiki Bob's closed, Williams, Carly, Michelle, and the others in the group moved outside onto the sidewalk. Michelle began to cross Meridian Street, and a vehicle struck her, causing her to fall down onto the street. Williams immediately went to Michelle's side and told her not to stand up. Carly began to yell at the driver of the vehicle which had struck her mother, and Williams went over to calm Carly down. A large number of people were in the street and area immediately following the accident.

Indianapolis Metropolitan Police Sergeant Jerry Durham and Officer Matthew Woodings arrived at the scene. Carly, one of her friends, and a nurse remained with Michelle to wait until an ambulance arrived. The officers attempted to clear the street so that emergency vehicles could access the area to treat Michelle. Most of the people in the street immediately obeyed the officers' requests to move off of the street.

The officers asked Williams multiple times to step out of the street and go to the sidewalk. Williams stated that he knew Michelle, and the officers told Williams that

2

there were too many people in the street, that he did not need to be in the street, and that he could wait on the sidewalk and let the medics do their job when they arrived. Williams appeared "extremely intoxicated" and "belligerent" to Sergeant Durham, who further testified that Williams had "a very strong odor of an alcoholic beverage about his breath and person, glossy red, bloodshot eyes, slurred speech and very unsteady balance." Transcript at 9-10. Officer Woodings gave several loud verbal commands to exit the street, but Williams "refused to do so and stood still." Id. at 18. Officer Woodings observed Williams "staggering from side to side." Id. After Officer Woodings was confident that the streets were going to be clear for the arrival of emergency personnel, he stepped closer to Williams and asked him to move out of the street. However, Sergeant Durham and Officer Woodings "physically had to remove [Williams] from the street for his safety." Id. at 10. Sergeant Durham held Williams's right arm, and Officer Woodings held Williams's left arm, and the officers moved Williams toward the sidewalk. Id. at 10-11. Williams "was staggering as [the officers] were trying to escort him to the curb." Id. at 18-19. Approximately four or five feet from the sidewalk, Williams "jerked his left arm away from Officer Woodings['s] grasp," "grabbed [Sergeant Durham's] hand and shoved [it] off of his arm away from him," and "a couple of steps away from [the officers] made the comment, 'I'm out of the f------ street now.'" Id. at 11.

On July 14, 2012, the State charged Williams with public intoxication as a class B misdemeanor. On October 4, 2012, the court held a bench trial, at which the State presented the testimony of Sergeant Durham and Officer Woodings, and Williams

3

presented the testimony of Michelle and also testified on his own behalf. Williams stated that he had one beer at Hooters and had "nothing to drink the rest of the night." Id. at 28. The court found Williams guilty as charged. The court sentenced Williams to 180 days with 178 days suspended.

## DISCUSSION

The issue is whether the evidence is sufficient to sustain Williams's conviction. When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. Bailey v. State, 907 N.E.2d 1003, 1005 (Ind. 2009). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." Id. We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. Id.

The offense of public intoxication as a class B misdemeanor is governed by Ind. Code § 7.1-5-1-3, which provides:

> Subject to section 6.5 of this chapter, it is a Class B misdemeanor for a person to be in a public place or a place of public resort in a state of intoxication caused by the person's use of alcohol or a controlled substance (as defined in IC 35-48-1-9), if the person:
>
> (1)     endangers the person's life;
>
> (2)     endangers the life of another person;
>
> (3)     breaches the peace or is in imminent danger of breaching the peace; or
>
> (4)     harasses, annoys, or alarms another person.

4

(Supp. 2012) (eff. July 1, 2012).[1]  In its charging information, the State alleged that "[o]n or about July 14, 2012, in Marion County, State of Indiana, at the 200 BLK of S. MERIDIAN ST location, a public place or place of public resort, [Williams], was in a state of intoxication caused by his or her use of alcohol or a controlled substance . . . ; further, the defendant endangered his . . . life or the life of another person; breached the peace; or harassed, annoyed or alarmed another person."  Appellant's Appendix at 13. Thus, the State was required to prove that Williams was in a public place or place of public resort on Meridian Street in a state of intoxication caused by his use of alcohol or a controlled substance and endangered his life or the life of another person, breached the peace, or harassed, annoyed, or alarmed another person.

Ind. Code 9-13-2-86 provides that "'Intoxicated' means under the influence of . . . alcohol . . . so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties."  "Impairment can be established by evidence of: (1) the consumption of a significant amount of alcohol; (2) impaired attention and reflexes; (3) watery or bloodshot eyes; (4) the odor of alcohol on the breath; (5) unsteady balance; (6) failure of field sobriety tests; and (7) slurred speech." Vanderlinden v. State, 918 N.E.2d 642, 644 (Ind. Ct. App. 2009), trans. denied.

Williams maintains that the State failed to prove beyond a reasonable doubt that he endangered his life or the life of another, breached the peace, or harassed, annoyed or alarmed another person.  He contends that there is no nexus between his conduct and his alleged state of intoxication.  He argues that the offense of public intoxication

---

[1] Prior to the amendment effective July 1, 2012, Ind. Code § 7.1-5-1-3 provided that "[i]t is a Class B misdemeanor for a person to be in a public place or a place of public resort in a state of intoxication caused by the person's use of alcohol or a controlled substance (as defined in IC 35-48-1-9)."

5

"previously required only proof of one's intoxicated state in a public place," that the legislature "amended the statute to include additional elements which require the State to prove endangerment, breach of peace, or harassment alarm or annoyance," and that "[t]herefore, to the extent the trial court's findings suggest it relied solely upon evidence of intoxication to convict, it was error." Appellant's Brief at 7. Williams also argues that the situation was very chaotic and emotional and that he was acting with an intent to help Michelle, that the trial court found that Williams's testimony was credible, and that the statute requires more than insubordination. Williams further maintains that nothing in the record suggests that his behavior would have been different had he not consumed any alcohol at all and that there is no discernable link between his intoxicated state and subsequent behavior. He contends that he could not have been endangering himself by staying at Michelle's side when police permitted several others to do the same, that there was only the speculative possibility of harm at best, and that under all of the circumstances there is no legitimate reason why Williams's presence at the scene would have created any more or less danger than Carly's presence.

The State maintains that there is clear evidence that Williams was intoxicated, that he was in a public place, and that he endangered himself due to his intoxication. The State asserts that there is evidence beyond Williams's intoxication that establishes the endangerment element and that the evidence shows that a large crowd gathered near the accident, that the police wanted to clear the street so that emergency responders could arrive quickly to aid Michelle, that Williams refused to move off of the street although commanded by the police several times to do so, and that Williams remained in the

middle of a major city street exposed to danger from any traffic. The State argues that Williams was belligerent with the officers, which the officers testified they believed was due to his intoxicated state, that Williams's belligerent attitude could have led him to physically assault the officers, an act that would have endangered the officers and Williams, and that in fact Williams physically jerked his arm away from one officer and shoved the other officer's hand. The State also contends that Williams's failure to clear the streets when instructed resulted in an imminent danger of a breach of the peace and that Williams's intoxicated condition, coupled with his belligerent attitude, could readily have resulted in physical violence between Williams and the officers.

In his reply brief, Williams argues that, under the statute, evidence of actual endangerment is required, that Williams could not have been exposed to danger from oncoming traffic if he remained by his friend's side because the street had been blocked off by police, and that he did not actually physically assault the officers. Williams also argues that "breach of the peace" was not the theory of guilt advanced at trial. Appellant's Reply Brief at 3.

We first note that Williams does not argue that he was not in a public place, and the evidence shows that he was on Meridian Street in downtown Indianapolis outside Tiki Bob's, a public place, at the time that the officers observed his behavior and ordered him to move to the sidewalk. To the extent that he argues that the evidence is insufficient to show that he was intoxicated, the evidence most favorable to his conviction reveals that Officer Woodings observed Williams "staggering from side to side," and that Sergeant Durham testified that Williams appeared "extremely intoxicated" and

7

"belligerent" and that he noticed "a very strong odor" of alcohol coming from Williams's breath, that Williams's eyes were bloodshot and "glossy red," and that Williams had "slurred speech" and a "very unsteady balance." Transcript at 9-10, 18.

To the extent that Williams asserts that the trial court found that Williams's testimony was credible, we note that the court made the comment at trial that "if [Williams] had just heeded to policeman's advice and requests, none of us would have been here today." Id. at 35. At sentencing, the court stated that Williams was "very credible" and that "most people I don't believe a word they say sometimes when they testify, but . . . what sticks in the back of my mind is why 28 years of law enforcement experience is gonna come in here and make this story up and I just don't see them doing that." Id. Near the end of the trial before finding Williams guilty, the trial court noted the testimony that Williams was staggering and extremely intoxicated and stated that "[o]ne beer in however many hours is over here," that "[t]he two don't obviously add up," and that "[t]he Court finds the testimony of the officers more credible . . . ." Id. at 34. On appeal, we may not reweigh the evidence or judge witness credibility. See Bailey, 907 N.E.2d at 1005. Further, in light of the evidence, we find Williams's argument that the trial court's comment that, if Williams had heeded the officers' requests, "none of us would have been here today," insinuates that the court found Williams guilty of public intoxication for the sole reason that he failed to comply with the officers' orders to be unpersuasive. Transcript at 35. The testimony which the court noted showed that Williams was extremely intoxicated and staggering in the street, that he refused to move to the sidewalk after receiving several verbal commands to do so, that

8

he was eventually escorted to the sidewalk so that officers could "deal with him so []
[they] did not get struck by cars," that he was "belligerent at that time" which the officers
"associate[d] [] with alcohol," and that the officers believed that Williams was "an
intoxicated person who was a danger to himself." Id. at 14-15.

Moreover, with respect to Williams's assertion that the evidence is insufficient to
prove the elements of the offense of public intoxication, the evidence most favorable to
the conviction reveals that police attempted to clear the street where Michelle had been
struck so that emergency vehicles could access the area to treat her, that Williams was
extremely intoxicated and staggered from side to side, that he refused to move off of the
street and to the sidewalk although commanded by the police multiple times to do so, that
he was belligerent with the officers, which the officers believed was due to his
intoxicated condition, that Williams did not move out of the street until the officers
physically escorted him off of the street, that he was staggering as the officers escorted
him to the sidewalk, and that he jerked his arm away from Officer Woodings and shoved
Sergeant Durham's hand away from him. Sergeant Durham testified that the officers had
to escort Williams off of the street and "over to the sidewalk to deal with him so that
[they] did not get struck by cars" and that the officers believed that Williams was "an
intoxicated person who was a danger to himself." Id. at 14.

Based upon the record, we cannot say that the evidence presented by the State is
insufficient for a reasonable trier of fact to conclude that Williams was in a public place
in a state of intoxication and endangered himself or other persons, breached the peace, or
harassed, annoyed, or alarmed another person. Accordingly, we conclude that evidence

9

of probative value exists from which the trial court as the trier of fact could have found Williams guilty beyond a reasonable doubt of public intoxication as a class B misdemeanor.

## CONCLUSION

For the foregoing reasons, we affirm Williams's conviction for public intoxication as a class B misdemeanor.

Affirmed.

RILEY, J., and BRADFORD, J., concur.