# FOR PUBLICATION



FILED
Oct 08 2013, 5:24 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**PATRICIA CARESS MCMATH**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CHANDRA K. HEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DAVID HOLBERT, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1302-CR-54 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Rebekah Pierson-Treacy, Judge
Cause No. 49F19-1208-CM-53727

**October 8, 2013**

**OPINION - FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

David Holbert appeals his convictions for possession of marijuana, as a Class A misdemeanor, and public intoxication, as a Class B misdemeanor, following a bench trial. Holbert raises the following two issues for our review:

1.    Whether the State violated Holbert's rights under the Fourth Amendment to the United States Constitution or Article I, Section 11 of the Indiana Constitution when it stopped him and searched his person; and

2.    Whether the State presented sufficient evidence to support his conviction for public intoxication.

We affirm in part and reverse and remand in part.

## FACTS AND PROCEDURAL HISTORY

In the evening hours of August 4, 2012, Melissa Allen, a resident of Speedway, observed an unknown man twice cross her yard and enter her neighbor's backyard. Allen then observed the man enter her neighbor's garage. She called 9-1-1 to report a suspected burglary, and she described the man as an African-American male who was "wearing a yellow and blue jersey, dark colored pants[, and] with salt and pepper hair." Transcript at 14. She reported to dispatch that the man was proceeding south along the public sidewalk on Tenth Street.

Officers Christopher Helmer and John Hammel of the Speedway Police Department promptly responded. They observed a man, Holbert, matching Allen's description of the suspect walking south along Tenth Street. The officers activated their vehicle's emergency lights and stopped Holbert. Allen, who had remained on the phone

2

with dispatch, observed the officers stop the same man who had prompted her to call 9-1-1.

Upon stopping Holbert, the officers immediately placed him in handcuffs and patted him down for officer safety. The officers discovered a baggie of marijuana and a can of beer on Holbert's person in the course of the pat down. After they had placed Holbert in handcuffs, the officers observed that Holbert's eyes were glassy and bloodshot, he smelled of alcohol, he swayed while walking and standing, and his speech was "slow and slurred." Id. at 66. The officers then brought Allen to Holbert's location, and she identified him as the man she had observed entering her neighbor's garage.

On August 6, the State charged Holbert with possession of marijuana, as a Class A misdemeanor, and public intoxication, as a Class B misdemeanor. During the ensuing bench trial, Holbert objected to the admission of the marijuana and evidence of his intoxication, which the trial court denied. The court found him guilty as charged and sentenced him accordingly. This appeal ensued.

**DISCUSSION AND DECISION**

**Issue One: Admission of Evidence**

On appeal, Holbert first argues that the trial court abused its discretion when it admitted the evidence that was either seized or observed during the police stop. Our standard of review of a trial court's admission or exclusion of evidence is an abuse of discretion. Speybroeck v. State, 875 N.E.2d 813, 818 (Ind. Ct. App. 2007). A trial court abuses its discretion only if its decision is clearly against the logic and effect of the facts and circumstances before the court. Id. In reviewing the admissibility of evidence, we

3

consider only the evidence in favor of the trial court's ruling and any unrefuted evidence in the defendant's favor. Dawson v. State, 786 N.E.2d 742, 745 (Ind. Ct. App. 2003), trans. denied.

Holbert contends that the State's seizure of his person was unreasonable under the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Indiana Constitution. Both of those constitutional provisions protect citizens from unreasonable searches and seizures. See Hathaway v. State, 906 N.E.2d 941, 944-45 (Ind. Ct. App. 2009), trans. denied. Generally, a search warrant is a prerequisite to a constitutionally proper search and seizure. Halsema v. State, 823 N.E.2d 668, 676 (Ind. 2005). When a search or seizure is conducted without a warrant, the State bears the burden of proving that an exception to the warrant requirement existed at the time of the search or seizure. Id.

However, in Terry v. Ohio, 392 U.S. 1, 30 (1968), the United States Supreme Court held that an officer may, consistent with the Fourth Amendment, conduct a brief investigatory stop when, based on a totality of the circumstances, the officer has a reasonable, articulable suspicion that criminal activity is afoot. Hardister v. State, 849 N.E.2d 563, 570 (Ind. 2006). An investigatory stop allows a police officer to "temporarily freeze the situation in order to make an investigative inquiry." Johnson v. State, 766 N.E.2d 426, 429 (Ind. Ct. App. 2002), trans. denied. A Terry stop is a lesser intrusion on the person than an arrest and may include a request to see identification and inquiry necessary to confirm or dispel the officer's suspicions. Id. (citing Hiibel v. Sixth Judicial Dist. Court of Nev., 542 U.S. 177, 185-89 (2004)). Reasonable suspicion entails

4

some minimal level of objective justification for making a stop, something more than an unparticularized suspicion or hunch, but less than the level of suspicion required for probable cause. Wilson v. State, 670 N.E.2d 27, 29 (Ind. Ct. App. 1996) (citing United States v. Sokolow, 490 U.S. 1, 7 (1989)). Indiana has adopted the Terry rationale in determining the legality of an investigatory stop under Article I, Section 11. Id.

Here, Holbert acknowledges that officers had reasonable suspicion to initiate a Terry stop but contends that that suspicion did not justify placing him in handcuffs. See Appellant's Br. at 6. Holbert also asserts that the officers did not have proper justification to pat him down and that the officers could not have recognized the marijuana on his person through the plain feel doctrine. We cannot agree with any of these arguments.

It is beyond dispute that "an officer who stops a suspect on reasonable suspicion of [an inherently dangerous] offense may conduct a protective search." N.W. v. State, 834 N.E.2d 159, 165 (Ind. Ct. App. 2005) (quotation and alteration omitted), trans. denied. This right of the officer is "automatic whenever the suspect has been stopped upon the suspicion that he has committed, was committing, or was about to commit a type of crime for which the offender would likely be armed." Id. It is equally well established that burglary is one such type of crime. Id. at 165-66.

There is no question that the officers stopped Holbert based on a reasonable suspicion that he had committed a burglary. Accordingly, their right to conduct a protective search by briefly placing him in handcuffs and frisking him was automatic. Further, in the course of executing this protective search the officers found marijuana on

Holbert's person, which they testified they immediately recognized, based on their experience and training, to be marijuana based on its feel. See Minnesota v. Dickerson, 508 U.S. 366, 375 (1993). Thus, the officers properly stopped, frisked, observed, and seized the marijuana from Holbert, and the trial court did not abuse its discretion under either the federal or state constitution in the admission of this evidence.

### Issue Two: Evidence of Public Intoxication

Holbert also argues that the State failed to present sufficient evidence to support his conviction for public intoxication, as a Class B misdemeanor. When reviewing a claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. Jones v. State, 783 N.E.2d 1132, 1139 (Ind. 2003). We look only to the probative evidence supporting the judgment and the reasonable inferences that may be drawn from that evidence to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. Id. If there is substantial evidence of probative value to support the conviction, it will not be set aside. Id.

Historically, to prove public intoxication, as a Class B misdemeanor, it was enough for the State to show that the defendant was intoxicated while in a public place. See Moore v. State, 949 N.E.2d 343, 344 (Ind. 2011). In Moore, the defendant consumed two beers at her sister's house and called a friend to drive her home. En route, an officer pulled the friend's car over on a public street for a nonfunctioning license plate light, and the officer cited the defendant for public intoxication. The defendant was subsequently convicted. This court reversed her conviction, but our supreme court affirmed it.

As a result of our supreme court's decision in <u>Moore</u>, the General Assembly amended Indiana Code Section 7.1-5-1-3, effective July 1, 2012, to now state:

it is a Class B misdemeanor for a person to be in a public place or a place of public resort in a state of intoxication caused by the person's use of alcohol . . . , if the person:

(1) endangers the person's life;
(2) endangers the life of another person;
(3) breaches the peace or is in imminent danger of breaching the peace; or
(4) harasses, annoys, or alarms another person.

Ind. Code § 7.1-5-1-3(a). The General Assembly's addition of the four listed criteria "promotes public policy encouraging inebriated persons to avoid creating dangerous situations by walking, catching a cab, or riding home with a designated driver rather than driving while intoxicated." <u>Stephens v. State</u>, ___ N.E.2d ___, No. 49A04-1301-CR-18, slip op. at 2 (Ind. Ct. App. Aug. 15, 2013). Thus, the amended statute reflects this court's pre-<u>Moore</u> decisions that the "'[t]he spirit of the public intoxication statute is to prevent people from becoming inebriated and then bothering and/or threatening the safety of other people in public places.'" <u>Jones v. State</u>, 881 N.E.2d 1095, 1098 (Ind. Ct. App. 2008) (quoting <u>Wright v. State</u>, 772 N.E.2d 449, 456 (Ind. Ct. App. 2002)).

Holbert argues that the State failed to meet its burden under the amended statute because, while he was plainly intoxicated in a public place, there is no evidence that he met any of the four enumerated criteria while in a public place. The State responds that Holbert's behavior alarmed Allen when he walked across her yard and that she continued to be alarmed when she observed Holbert walking on the sidewalk. Thus, the State contends that it does not matter whether Holbert's behavior in Allen's yard, the behavior

7

that initially alarmed her, did not occur in a public place because she remained alarmed after Holbert had entered onto the sidewalk.

This is a question of first impression in our interpretation of the amended statute. "When a statute has not previously been construed, our interpretation is controlled by the express language of the statute and the rules of statutory construction." State v. Prater, 922 N.E.2d 746, 748 (Ind. Ct. App. 2010), trans. denied. "We review the statute as a whole and presume the legislature intended logical application of the language used in the statute, so as to avoid unjust or absurd results." Id. In other words, "we are obliged to suppose that the General Assembly chose the language it did for a reason." Id. at 750.

Because the amended statute is relatively new, "we have little precedent concerning the new language." Stephens, ___ N.E.2d ___, slip op. at 2. In Stephens, the defendant was intoxicated but in his private residence when he engaged another man in an altercation. The defendant left his residence and called the police from a public parking lot. The police arrived and arrested him. The State charged him with public intoxication and the trial court convicted him of that charge, but we reversed his conviction on appeal, stating:

> The mere fact that he was intoxicated in a public parking lot did not amount to a violation of the public intoxication statute. He did not breach the peace, and to the extent the trial court reasoned that he was in "imminent danger of breaching the peace" if he returned home, we find such a conclusion to be speculative.

Id. at 3.

We also considered the amended statute in Williams v. State, 989 N.E.2d 366 (Ind. Ct. App. 2013). In that case, the defendant, while intoxicated, "refused to move off of the

8

street and to the sidewalk although commanded by the police multiple times to do so"; "was belligerent with the officers"; "did not move out of the street until the officers physically escorted him off of the street"; "was staggering as the officers escorted him to the sidewalk"; and "jerked his arm away from [one officer] and shoved [another's] hand away . . . ." Id. at 370-71. We affirmed his conviction for public intoxication, as a Class B misdemeanor. Id. at 371.

Holbert's case is closer to Stephens than to Williams. The behavior that alarmed Allen occurred while Holbert was on private property, not public property. And because the officers did not notice that Holbert was intoxicated until after they had stopped him and placed him in handcuffs, the State does not suggest that Holbert had placed himself in danger by walking down a public sidewalk, adjacent to a public roadway, while intoxicated. Thus, there is no evidence that Holbert engaged in any of the four listed criteria while he was in a public place.

This conclusion is supported by the text of the statute. Again, the statute provides that it is a Class B misdemeanor "to be in a public place . . . in a state of intoxication . . . if" the person is engaging in one of the four listed criteria. I.C. § 7.1-5-1-3(a). That is, the plain language of the statute conditions the entirety of the phrase "to be in a public place . . . in a state of intoxication" on the occurrence of one of the four listed criteria. This reading is also consistent with this court's recognition that "'[t]he spirit of the public intoxication statute is to prevent people from becoming inebriated and then bothering and/or threatening the safety of other people in public places.'" Jones, 881 N.E.2d at 1098 (emphasis added) (quoting Wright, 772 N.E.2d at 456). Thus, the public

9

intoxication statute requires that the prohibited behavior have occurred while the defendant was in a public place.

Moreover, "in interpreting a statute, we must consider not only what the statute says but what it does not say." Curley v. Lake Cnty. Bd. of Elections & Registration, 896 N.E.2d 24, 34 (Ind. Ct. App. 2008), trans. denied. The amended statute does not say, as the State's argument suggests, that it is a Class B misdemeanor to be in a public place in a state of intoxication whenever one's intoxication resulted in one of the four listed criteria. There is no question that Holbert's behavior alarmed Allen, but there is also no question that his alarming behavior did not occur in a public place. Accordingly, we agree with Holbert that the State failed to present any evidence that he committed any of the four criteria listed in the public intoxication statute while in a public place and, as such, we must reverse his conviction for public intoxication, as a Class B misdemeanor. We remand with instructions that the trial court vacate Holbert's public intoxication conviction.

Affirmed in part and reversed and remanded in part.

MATHIAS, J., and BROWN, J., concur.