**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Jun 04 2014, 9:47 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**SUZY ST. JOHN**
Indianapolis, Indiana

**ANDREW BEAN**
Certified Legal Intern
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CHANDRA K. HEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| AUBREY THOMPSON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1307-CR-606 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Rebekah Pierson-Treacy, Judge
The Honorable Shatrese Flowers, Commissioner
Cause No. 49F19-1211-CM-78764

**June 4, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Aubrey Thompson (Thompson), appeals her conviction of public intoxication, a Class B misdemeanor, Ind. Code § 7.1-5-1-3.[1]

We reverse.

## ISSUE

Thompson raises one issue on appeal, which we restate as: Whether there is sufficient evidence beyond a reasonable doubt to sustain Thompson's conviction of public intoxication.

## FACTS AND PROCEDURAL HISTORY

Shortly before 3:00 a.m. on November 18, 2012, Indianapolis Metropolitan Police Department (IMPD) Officer Michael Reiger (Officer Reiger) was dispatched to an apartment complex on the City's north side in response to a domestic disturbance report. Upon arrival, Officer Reiger observed as Denise Robinson (Robinson), who was standing in front of her apartment building, engaged in a verbal and physical altercation with her boyfriend, Brian Jenkins (Jenkins). Officer James Gillespie (Officer Gillespie) arrived on the scene, and as the officers attempted to assess the situation, Robinson refused to cease her screaming or cooperate with the investigation. After Robinson failed to heed the officers' warnings to stop making unreasonable noise, Officer Gillespie placed her under arrest.

---

[1] An oral argument was conducted on March 25, 2014, at Terre Haute South High School in Terre Haute, Indiana. We thank the attorneys for their excellent advocacy and the High School for its hospitality.

Robinson's friend, Thompson, was present at the scene and had witnessed the entire episode. Upon realizing that Robinson was being arrested and that the officers were permitting Jenkins to stay in Robinson's apartment, Thompson "became agitated" and approached the officers to communicate her distaste with their decisions. (Transcript p. 10). Thompson attempted to provide Officer Gillespie and Officer Reiger with a copy of Robinson's lease to establish that Jenkins had no right to be in the apartment, but Officer Gillespie instructed Thompson to go inside the apartment because she was disrupting the investigation. Although Thompson initially complied, she returned to the parking lot a short time later. Several more times, the officers ordered Thompson to stay inside the apartment only for her to reappear and interrupt them. Eventually Officer Gillespie advised Thompson "that if she did not stop disrupting the investigation [the officers] would have her be a subject of an investigation." (Tr. pp. 19-20).

Following her final warning, Thompson went inside the apartment but emerged minutes later, carrying her purse, and informed the officers "that she was going to leave the property." (Tr. p. 11). Thompson stated that Jenkins "is a scary person" and she could not stay at the apartment because she "was [in] fear for [her] life." (Tr. pp. 45, 47). Detecting an "odor of alcoholic beverage coming from her person, [along with] slurred speech[] and bloodshot, glassy eyes[,]" the officers detained Thompson out of concern that she would be "putting herself in danger as well as others on the road." (Appellant's App. p. 14; Tr. p. 12). Thompson submitted to a portable breathalyzer test, which yielded a blood alcohol concentration (BAC) of 0.03. At this point, Officer Gillespie placed Thompson under arrest.

3

Later that day, the State filed an Information, charging Thompson with one Count of public intoxication, a Class B misdemeanor, I.C. § 7.1-5-1-3. On June 27, 2013, the trial court conducted a bench trial. At the close of the evidence, the trial court entered a verdict of guilty and sentenced Thompson to a term of 180 days, with two days executed and 178 days suspended, and ordered her to complete forty hours of community service.

Thompson now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

In a sufficiency of the evidence case, the standard of review is well established. We neither reweigh the evidence nor judge the credibility of witnesses. *Holbert v. State*, 996 N.E.2d 396, 400 (Ind. Ct. App. 2013), *trans. denied*. We consider only the evidence most favorable to the trial court's judgment, along with any reasonable inferences that may be drawn therefrom. *Id.* As long as there is substantial evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt, we will affirm the conviction. *Id.*

### II. *Public Intoxication Elements*

Thompson claims that there is insufficient evidence to support her conviction of public intoxication. In 2012, the General Assembly amended the public intoxication statute (P.I. Statute) by appending four new elements to the existing statutory criteria that an individual be intoxicated while in public. *Stephens v. State*, 992 N.E.2d 935, 938 (Ind. Ct. App. 2013). The P.I. Statute provides that

4

it is a Class B misdemeanor for a person to be in a public place or a place of public resort in a state of intoxication caused by the person's use of alcohol or a controlled substance . . . if the person:

  (1) endangers the person's life;
  (2) endangers the life of another person;
  (3) breaches the peace or is in imminent danger of breaching the peace; or
  (4) harasses, annoys, or alarms another person.

I.C. § 7.1-5-1-3(a). In the Information, the State cited all four criteria as bases for Thompson's public intoxication charge. However, during the trial, the State clarified:

At no point has the State alleged that [Thompson] annoyed the police or harassed the police or even alarmed the police . . . conducting the investigation. The issue came because [Thompson] in her intoxicated state when she decided she was going to leave and grabbed her purse and tried to leave . . . . At that point the officers did what any officer would do. They became concerned for the community. They b[ecame] concerned for the safety of the citizens of Marion County[] when someone with signs of intoxication . . . could possibly [be] sitting behind the wheel.

(Tr. pp. 64-65). As such, Thompson's conviction pivots on whether she endangered either her own life or the life of another person. I.C. § 7.1-5-1-3(a)(1)-(2).

Thompson does not challenge the trial court's finding that she was intoxicated or that she was in a public place; rather, her sole contention on appeal is that there is no evidence to support a finding that she endangered her own life or the life of anyone else. Specifically, Thompson asserts that, by simply informing the police officers of her plan to leave the scene, she did not manifest an intent to drive herself, and "the *possibility* of driving" is insufficient to establish endangerment. (Appellant's Br. p. 6). Additionally, Thompson maintains that even if she did intend to drive, the possibility that she might drive in an endangering manner "is too remote and speculative for a conviction." (Appellant's Br. p. 9). On the other hand, the State contends that "[i]t was perfectly reasonable for the

5

trier of fact to infer that Thompson had the ability to drive a vehicle in an intoxicated state and endanger herself or others." (State's Br. p. 5).

## A. *Actual Endangerment*

Thompson argues that there is no evidence of endangerment because she did not actually drive her vehicle. We first note that the term "endangers" is not defined by the P.I. Statute. In general, statutorily undefined words are assigned their plain, ordinary, and usual meaning. *Weideman v. State*, 890 N.E.2d 28, 32 (Ind. Ct. App. 2008) (citing I.C. § 1-1-4-1(c)). Consulting the dictionary, we find that "endanger" is defined as "to cause (someone or something) to be in a dangerous place or situation"; "to bring into danger or peril"; or "to create a dangerous situation." MERRIAM-WEBSTER, http://www.merriam-webster.com/dictionary/endanger (last visited Apr. 1, 2014). The policy underlying the newly-amended P.I. Statute acknowledges the potential risk of driving a vehicle while intoxicated. *See Stephens*, 992 N.E.2d at 938 (noting the purpose of the amendment is to "encourag[e] inebriated persons to avoid creating dangerous situations by walking, catching a cab, or riding home with a designated driver rather than driving while intoxicated"). Thus, the question we face is whether, as the State argues, it is sufficient for the purposes of the P.I. Statute that Thompson "created the potential that she would drive on the roadway in an intoxicated state and endanger herself or those on or near the roadways." (State's Br. p. 6).

Given the relative novelty of the amendment, the case law interpreting the P.I. Statute in its current form is sparse. We did, however, recently address the proof required to establish the endangerment elements. In *Sesay v. State*, No. 49A02-1305-CR-434, at *1

6

(Ind. Ct. App. Mar. 24, 2014), police officers arrived on the scene of a car accident to find Sesay standing next to his car, "approximately three to five feet away from the roadway." Sesay, who was not driving, was intoxicated, and the officers arrested him for public intoxication because he "was so close to the side of the road he could have been hit by a car." *Id.* In reversing Sesay's conviction, we found that "speculation regarding things that *could* happen in the future is not sufficient to prove the present crime of public intoxication. This is not an attempt crime where the person can take a substantial step toward committing public intoxication by being intoxicated." *Id.* at *6.

In the present case, the evidence reveals that Thompson, while in public, exhibited signs of intoxication and *might* have decided to drive somewhere. We could devise an infinite number of hypotheticals in which *any* conduct could *potentially* endanger someone, but to do so "would stretch the statute to an absurdity." *Id.* We cannot base convictions on abstract possibilities, and the fact that Thompson *could* have driven that night does not demonstrate affirmative conduct causing endangerment.

Conversely, in *Williams v. State*, 989 N.E.2d 366 (Ind. Ct. App. 2013), we upheld a conviction for public intoxication based on endangerment. In *Williams*, the defendant refused to comply with the police officers' orders to stand on the sidewalk rather than in the street. *Id.* at 367. We found that, by standing in the street, the inebriated defendant put himself at risk of being struck by oncoming traffic. *Id.* at 370. In addition, police officers were attempting to clear the street for emergency personnel so they could attend to a woman who had been struck by a vehicle, but because the police officers had to remove the belligerent defendant from the street in order to protect him and to ensure that the

7

ambulance had access to the injured woman, the defendant also put the police officers at risk of being hit by a vehicle. *Id.* at 367-68. Accordingly, endangerment does not necessarily require that a person actually have been harmed. Instead, it requires actual *conduct* by the defendant which places the defendant or another person in actual danger of harm. The harm itself becomes more probable by virtue of the defendant's conduct. *See Sesay*, No. 49A02-1305-CR-434, at *8 (Bradford, J., concurring).

Thompson contends that the language of the P.I. Statute evidences the legislative intent that the endangerment must be actual and in the present. When "interpreting a statute, we must consider not only what the statute says but what it does not say." *Holbert*, 996 N.E.2d at 402. The P.I. Statute provides that a person commits public intoxication if he "breaches the peace or is *in imminent danger* of breaching the peace." I.C. § 7.1-5-1-3(a)(3) (emphasis added). In contrast, the endangerment provisions do not include the "imminent danger" description, nor any other modifying language such as "might endanger." I.C. § 7.1-5-1-3(a)(1)-(2); *Sesay*, No. 49A02-1305-CR-434, at *6. Thus, while we do not disagree with the dissent that police should not necessarily have to wait for actual danger to manifest itself before interceding when a person is publicly intoxicated, we do believe they need to wait for the endangering *conduct* to manifest itself. Thompson announced she was going to leave the scene; however, at the point at which she was arrested, she could have as easily walked away as driven. Any harm remained remote and speculative—a mere possibility as opposed to a reasonable probability.

B. *Endangerment in the OWI Statute*

8

Notwithstanding whether Thompson actually drove, the State asserts that Thompson's evident intent to drive herself is precisely the conduct the P.I. Statute endeavors to prevent. We agree that the P.I. Statute affords protection to those intoxicated individuals who elect to walk or rely on public transportation rather than risk creating a dangerous situation by driving, but the Indiana General Assembly, through the operating while intoxicated (OWI) statute, has already determined that evidence of a driver's intoxication is not conclusive of a finding that the driver endangered anyone.

The OWI statute provides that it is a Class C misdemeanor for a person to operate a vehicle while intoxicated. I.C. § 9-30-5-2(a); *see Combs v. State*, 895 N.E.2d 1252, 1258-59 (Ind. Ct. App. 2008) (noting that, regardless of a defendant's BAC, "the State may prove intoxication 'by a showing of impairment'"). The charge is elevated to a Class A misdemeanor if the intoxicated individual "operates a vehicle in a manner that endangers a person." I.C. § 9-30-5-2(b). As a result, if Thompson had actually driven her vehicle that night, she may very well have been held criminally liable for a Class C misdemeanor OWI. However, in order to upgrade the charge to a Class A misdemeanor OWI, there would have to be "proof of endangerment that [exceeds] mere intoxication." *Outlaw v. State*, 918 N.E.2d 379, 382 (Ind. Ct. App. 2009), *opinion adopted*, 929 N.E.2d 196 (Ind. 2010).[2]

---

[2] We cannot agree with the dissent that evidence that a person drove while intoxicated goes beyond mere intoxication and proves endangerment for the purposes of the P.I. Statute. Such a position is inconsistent with our existing OWI law, as noted above. Regardless, there is no evidence here that Thompson drove while intoxicated or, as characterized by the dissent, even "attempted to drive while intoxicated."

9

Likewise, in order to hold Thompson liable for public intoxication, there must be proof that her conduct operated to endanger herself or another. As we have already stated, Thompson did not engage in any affirmative conduct to place anyone in danger. Moreover, because evidence of intoxication is not *per se* evidence of endangerment in the OWI context, we find that, even if Thompson had elected to drive, she would have had to do more than just shift her vehicle into gear for the State to establish endangerment under the P.I. Statute. *See id.* (finding no evidence of endangerment where defendant, although intoxicated, did not operate his vehicle in an unsafe, erratic, or unlawful manner). Accordingly, we conclude that evidence of Thompson's intoxication, combined with her asserted intent to leave the premises, is insufficient to prove the crime of public intoxication as a Class B misdemeanor.

## CONCLUSION

Based on the foregoing, we conclude that the evidence is insufficient to support Thompson's conviction of public intoxication because the State did not establish beyond a reasonable doubt that Thompson endangered her own life or the life of another person while intoxicated and in public.

Reversed.

ROBB, J. concurs

BRADFORD, J. dissents with separate opinion

10

# IN THE
# COURT OF APPEALS OF INDIANA

AUBREY THOMPSON,                    )
                                    )
    Appellant-Defendant,            )
                                    )
        vs.                       )     No. 49A02-1307-CR-606
                                    )
STATE OF INDIANA,                   )
                                    )
    Appellee-Plaintiff.             )

**BRADFORD, Judge, dissenting.**

Because I believe the State presented sufficient evidence to support Thompson's public intoxication conviction, I respectfully dissent. Thompson characterizes the evidence as establishing merely a "possibility" that she "might" drive while intoxicated. Appellant's App. p. 9. However, the record reveals that Thompson had driven earlier in the evening and was sitting in her vehicle when the officers arrived at the scene. After engaging the officers, an intoxicated Thompson retrieved her purse from Robinson's apartment and, as she was leaving, "advised [the officers] that she was going to be driving away." Tr. p. 12. This evidence establishes that Thompson attempted to drive while intoxicated, an

11

affirmative act I find endangering under Indiana Code subsections 7.1-5-1-3(a)(1) and (2). *See generally Sesay v. State*, 2014 WL 1177162 *7 (Ind. Ct. App. Mar. 24, 2014) (Bradford, J. concurring in result).

As I stated in *Sesay*, the plain and ordinary meaning of "endangerment" contemplates exposure to "probable harm." *Id.* (quoting WEBSTER'S THIRD NEW INT'L DICTIONARY 748 (14th ed. 1961). Moreover, "the spirit of the public intoxication statute is to prevent people from becoming inebriated and then bothering and/or threatening the safety of other people in public places." *Holbert v. State*, 996 N.E.2d 396, 401 (Ind. Ct. App. 2013), *trans. denied.* The amended statute specifically "promotes public policy encouraging inebriated persons to avoid creating dangerous situations [such as] driving while intoxicated." *Stephens v. State*, 992 N.E.2d 935, 938 (Ind. Ct. App. 2012), *trans. denied. Cf. Moore v. State*, 949 N.E.2d 343 (Ind. 2011). Considering this legislative intent, where an intoxicated person is attempting to drive, I do not believe the public intoxication statute requires police to wait for her to be successful.

Thompson relies on case law interpreting Indiana's OWI statute for the proposition that even driving while intoxicated is insufficient to prove endangerment under Indiana's public intoxication statute. This argument is misguided. The inquiry in the OWI context is whether *an intoxicated driver* committed an endangering act. *See Vanderlinden v. State*, 918 N.E.2d 642, 646 (Ind. Ct. App. 2009) (finding excessive speed sufficient). In *Vanderlinden*, we explained that the distinction in the two levels of OWI, one with an endangerment requirement and the other without, precludes the argument that "driving a

12

vehicle while intoxicated always endangers someone." *Id.* at 645. Therefore, we held that "the State is required to submit proof of 'endangerment' that goes beyond mere intoxication to obtain a conviction for Class A misdemeanor OWI." *Id.* at 645-46.

In the public intoxication context, the inquiry is whether *a publicly intoxicated person* committed an endangering act; operating a vehicle is not an element of the offense. Thus, when applied to the distinction in the pre- and post-amendment public intoxication statutes, the logic of *Vanderlinden* correspondingly precludes the argument that being publicly intoxicated—as opposed to driving while intoxicated—always endangers someone. Evidence that a person drove while intoxicated, therefore, "goes beyond mere intoxication" and can be sufficient to prove endangerment under Indiana Code subsections 7.1-5-1-3(a)(1) and (2).

For the foregoing reasons, I would affirm the judgment of the trial court.