## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Mar 05 2018, 9:56 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew D. Anglemeyer
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Demetrius Thomas,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

March 5, 2018

Court of Appeals Case No.
49A02-1706-CR-1248

Appeal from the Marion Superior Court

The Honorable Alicia Gooden, Judge

Trial Court Cause No.
49G21-1509-F4-34105

**Vaidik, Chief Judge.**

# Case Summary

Demetrius Thomas appeals his conviction for Level 4 felony unlawful possession of a firearm by a serious violent felon (SVF). He contends that the trial court erred by admitting the gun into evidence because the police did not have reasonable suspicion to stop him. Because Thomas closely matched the description of a robbery suspect, we find that the police had reasonable suspicion to stop him. We therefore affirm the trial court.

# Facts and Procedural History

Around 2:20 p.m. on September 22, 2015, Marion County Sheriff's Deputy Ryan Tunny was on his way to Beech Grove to serve a warrant when he heard a dispatch about a robbery that had "just" occurred at the Walgreens on Churchman Avenue in Beech Grove. Tr. Vol. II p. 11; *see also id.* at 20 (Deputy Tunny "received the dispatch roughly three to five minutes after the robbery occurred").[1] According to the dispatch, the robbery suspect was a black male approximately 5'7" to 5'9" and 140 pounds and was wearing a red hat, a dark-colored shirt or hoodie, and dark pants or shorts. *Id.* at 15, 20.

---

[1] In his brief, Thomas claims that Deputy Tunny saw him "three to five minutes after the robbery." Appellant's Br. p. 8. Not so. The record reflects that Deputy Tunny heard the dispatch approximately three to five minutes after the robbery occurred and that Deputy Tunny spotted Thomas five to ten minutes after hearing the dispatch. *See* Tr. Vol. II p. 12, 20; *see also* Appellant's App. Vol. II p. 19.

[3] About five to ten minutes after hearing the dispatch, Deputy Tunny saw an individual, later identified as Thomas, walking northbound on Churchman, approximately 3/4 of a mile north of the Walgreens that had just been robbed. According to Deputy Tunny, Thomas matched the description of the robbery suspect. *Id.* at 12. Deputy Tunny drove past Thomas and radioed for backup. Deputy Tunny then drove back to Thomas, pulling up behind him. Deputy Tunny did not activate his lights or sirens. Deputy Tunny then exited his car and had Thomas "come up" to him. *Id.* at 13. Deputy Tunny identified himself and told Thomas that a robbery had just occurred at the Walgreens south of their location and that Thomas matched the description of the robbery suspect. Thomas was wearing a red and black baseball hat, a "[d]ark colored hooded sweatshirt," and "darker color" jeans. *Id.* at 14-15, 21. Deputy Tunny asked Thomas if he could "pat him down," and Thomas agreed. *Id.* at 16. As Deputy Tunny performed a pat down of Thomas's outer clothing, he felt a handgun in Thomas's jeans. Deputy Tunny handcuffed Thomas and removed the gun. Deputy Tunny asked Thomas if the gun was his, and Thomas said yes. As stipulated by the parties, Thomas is prohibited by law from possessing a firearm because he is an SVF by virtue of his 2010 conviction for Class B felony burglary. Ex. 1.

[4] Thereafter, the State charged Thomas with Level 4 felony unlawful possession of a firearm by an SVF.[2] Thomas moved to suppress the gun, arguing that police "lacked reasonable grounds to believe that [he] had committed an offense" and therefore illegally stopped him. Appellant's App. Vol. II p. 41. A bench trial was held in April 2017. At the bench trial, the trial court first heard evidence regarding Thomas's motion to suppress. The court denied Thomas's motion from the bench, Tr. Vol. II pp. 39-40, and then continued with the rest of the trial. The court found Thomas guilty of Level 4 felony unlawful possession of a firearm by an SVF and sentenced him to eight years, with four years in the Department of Correction, one year of community corrections, and three years suspended.

[5] Thomas now appeals.

# Discussion and Decision

[6] Thomas contends that the trial court erred in admitting the gun into evidence because Officer Tunny's warrantless stop of him was unreasonable in violation of the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution. A trial court's ruling on the

---

[2] The State also charged Thomas with Class B misdemeanor possession of marijuana; however, the trial court found him not guilty of that charge.

constitutionality of a search or seizure is reviewed de novo. *Garcia v. State*, 47 N.E.3d 1196, 1199 (Ind. 2016).

[7]     The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. "Accordingly, a warrantless search or seizure is per se unreasonable, and the State bears the burden to show that one of the well-delineated exceptions to the warrant requirement applies." *M.O. v. State*, 63 N.E.3d 329, 331 (Ind. 2016) (quotations omitted). One of the most-recognized exceptions is derived from *Terry v. Ohio*, in which the United States Supreme Court held that an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when, based on a totality of the circumstances, the officer has a reasonable, articulable suspicion that criminal activity is afoot. 392 U.S. 1, 30 (1968). A *Terry* stop is a lesser intrusion on the person than an arrest and may include a request to see identification and inquiry necessary to confirm or dispel the officer's suspicions. *Hardister v. State*, 849 N.E.2d 563, 570 (Ind. 2006) (citing *Hiibel v. Sixth Judicial Dist. Court of Nev.*, 542 U.S. 177, 185-89 (2004)). Reasonable suspicion entails some minimal level of objective justification for making a stop—that is, something more than an unparticularized suspicion or hunch but less than the level of suspicion

required for probable cause. *Wilson v. State*, 670 N.E.2d 27, 29 (Ind. Ct. App. 1996) (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989)).

[8] Here, the totality of the circumstances shows that Deputy Tunny had reasonable suspicion to stop Thomas because he closely matched the description of the robbery suspect. Deputy Tunny heard a dispatch that a robbery had occurred three to five minutes earlier at the Walgreens on Churchman Avenue in Beech Grove. According to the dispatch, the robbery suspect was a black male approximately 5'7" to 5'9" and 140 pounds and was wearing a red hat, a dark-colored shirt or hoodie, and dark pants or shorts. About five to ten minutes after hearing the dispatch, Deputy Tunny saw Thomas walking north on Churchman, about 3/4 of a mile north of the Walgreens that had just been robbed. Thomas was wearing a red and black baseball hat, a black hooded sweatshirt, and dark blue jeans.

[9] Thomas argues, however, that Deputy Tunny did not have reasonable suspicion to stop him because of "discrepancies between Thomas's description and the robbery suspect's description." Appellant's Br. p. 17. For example, Thomas notes that the hooded sweatshirt he was wearing had emblems and writing on the front and back, which were not included in the dispatch. Photographs of the sweatshirt, Exhibits A and B, show that the sweatshirt itself is black, and although it contains emblems and writing (in red and white), this does not change the fact that the sweatshirt is dark colored. And notably, the dispatch did not say that the robbery suspect was wearing a "plain" dark-colored shirt or hoodie with no emblems or writing. Thomas's sweatshirt

matched the description. Thomas next argues that the jeans he was wearing did not match the description. However, a photograph of the jeans, Exhibit D, corroborates Deputy Tunny's description of them as "darker color" jeans. Accordingly, Thomas's pants also matched the description. Finally, Thomas claims that his height did not match the description of the robber. On appeal, Thomas claims that he is 5'4"—and not 5'7" to 5'9" like the robbery suspect's description. As support for his claim that he is 5'4", he cites a portion of the transcript where defense counsel tells Deputy Tunny during cross-exam that Thomas is 5'4". Tr. Vol. II p. 22. However, according to jail records offered into evidence by Thomas himself, he is 5'6" and 140 pounds. Ex. C. This is nearly identical to the robbery suspect's description of 5'7" to 5'9" and 140 pounds.[3] Based on the above, it was perfectly reasonable for Deputy Tunny to suspect that Thomas was the robber; accordingly, Deputy Tunny properly stopped Thomas to investigate the matter. *See Broadus v. State*, 487 N.E.2d 1298, 1301 (Ind. 1986) (concluding that the police had reasonable suspicion that defendants were the suspects in a robbery even though their clothing did not exactly match the description and therefore the police properly stopped them to investigate).[4] There is no Fourth Amendment violation.

---

[3] During the suppression hearing, defense counsel had Thomas stand close to Deputy Tunny, who is 5'8", in order to establish a "significant discrepancy in height" between the two men. Tr. Vol. II p. 31. The prosecutor, however, "disagree[d] with [defense counsel's] characterization . . . that there is a drastic height difference between those two." *Id.* at 35.

[4] Thomas does not separately challenge Deputy Tunny's pat down of him. Not only did Thomas consent to the pat down, but he was suspected of committing robbery, an inherently dangerous offense. *See Holbert v. State*, 996 N.E.2d 396, 400 (Ind. Ct. App. 2013) ("It is beyond dispute that an officer who stops a suspect on

[10] Although the language of Article 1, Section 11 tracks the language of the Fourth Amendment verbatim, we use a different method of analysis. That is, the legality of a search or seizure under the Indiana Constitution requires an evaluation of the reasonableness of the police conduct under the totality of the circumstances. *Litchfield v. State*, 824 N.E.2d 356, 359 (Ind. 2005). In evaluating reasonableness, we consider three factors: (1) the degree of concern, suspicion, or knowledge that a violation has occurred, (2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and (3) the extent of law-enforcement needs. *Watkins v. State*, 85 N.E.3d 597, 601 (Ind. 2017). Applying these factors, we conclude that Deputy Tunny acted reasonably in stopping Thomas. As explained above, Thomas closely matched the physical description of the Walgreens robbery suspect and was approximately 3/4 of a mile north of the pharmacy when he was stopped. The initial intrusion—a *Terry* stop—was relatively minor. Deputy Tunny approached Thomas on foot and told him that he matched the description of a robbery suspect, and the stop escalated only when Deputy Tunny found a gun in Thomas's pocket during a pat down that Thomas consented to. Finally, Deputy Tunny had an interest in stopping Thomas—who closely matched the description of the robbery suspect—at that particular time so that he did not let the potential robber go and lose an important opportunity to solve the crime. Thus, under the totality of the circumstances, we find that Deputy Tunny's

reasonable suspicion of [an inherently dangerous] offense may conduct a protective search." (quotation omitted)), *trans. denied*.

conduct was reasonable and the stop did not offend Article 1, Section 11. Accordingly, the trial court did not err in admitting the gun into evidence.

[11] Affirmed.


May, J. and Altice, J., concur.